Lloyd E. BLANTON, Appellant,

v.

The CITY OF OKLAHOMA CITY, Appellee.

No. M–77–81.

Court of Criminal Appeals of Oklahoma.

Aug. 12, 1977.

Bill Pipkin, Moore, for appellant.

Walter M. Powell, Municipal Counselor, Curtis L. Smith, Asst. Municipal Counselor, Oklahoma City, for appellee.

## OPINION

PER CURIAM:

Appellant, Lloyd E. Blanton, hereinafter referred to as defendant, was charged, tried by jury and convicted of the offense of Driving Under the Influence of Alcohol, in violation of an Oklahoma City ordinance, in Oklahoma City Municipal Court of Record, Case No. 76–165736–1. Defendant was sentenced to ninety (90) days' imprisonment in the City jail, and assessed a fine of Three Hundred ($300.00) Dollars, and has perfected this timely appeal.

Briefly stated, the trial transcript shows that on July 23, 1976, at 9:40 p. m., Oklahoma City Police Officer Ed Smith, working with the Alcohol Safety Action Program, was driving south in the 7500 block of South Shields in Oklahoma City when up ahead he observed defendant's car traveling 35 miles per hour along the 55 miles per hour maximum four lane roadway. Defendant's car was straddling the broken line lane divider, weaving back and forth for several blocks and preventing cars behind defendant's car from passing. As defendant turned right, without signaling, Officer Smith turned on his emergency red lights. Defendant pulled into a private parking lot near a tavern and began to walk away from Officer Smith. When Smith approached him, he noticed a strong odor of alcohol on defendant's breath and about his person, said he was very unsteady on his feet and described his eyes as red and watery.

Smith testified he had to physically help defendant into the patrol car so he would not fall down. Smith said he read the defendant his constitutional rights and his chemical test rights. Officer Smith described the defendant as, "Obviously intoxicated." On cross-examination Smith said the defendant told him he had a bad leg, but further testified, "It was my opinion that it was not only his bad leg that was causing his staggering."

Defendant tested 0.27% blood alcohol content on the breathalyzer, and the breathalyzer operator described the defendant as being very unsteady and sluggish, as having difficulty speaking, and as having a strong odor of alcohol about his person.

In his first assignment of error the defendant argues that the court erred when it twice failed to admonish the jury before two recesses were called, in violation of 22 O.S.1971, § 854. The first time occurred midway through the trial so a hearing could be held to determine the admissibility of the breathalyzer test results (Tr. 85). Defendant did not call the lack of admonishment to the court's attention, and offered no objection. The second time occurred after both sides rested, while the court and the attorneys met in chambers to discuss the instructions. Defendant did not object to the failure to admonish until court had reconvened, and then he asked for a mistrial. Defendant cites no case authority requiring reversal on this ground and no prejudicial conduct which might have resulted in an unfair trial. Therefore, we dismiss this assignment of error. *Bryant v. State*, Okl.Cr., 521 P.2d 402 (1974), and *Lime v. State*, Okl.Cr., 508 P.2d 710 (1973).

As his second assignment of error defendant argues that the prosecutor was improperly permitted to endorse and call a witness after the trial had commenced. He refers to calling an Oklahoma City planner who testified the incident in question occurred within the Oklahoma City city limits. Defendant did not ask for a continuance and made no claim of surprise or possible

prejudice. See, *Britt v. State,* Okl.Cr., 285 P.2d 441 (1955), cited by defendant. In addition, defendant did not follow the rule as set out in *Paschall v. State,* 96 Okl.Cr. 198, 252 P.2d 175 (1952), in the second paragraph of the Syllabus:

"The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. Where he fails to do this the error, if any, is waived."

We therefore dismiss this assignment of error.

■ In his third assignment of error defendant contends that the trial court improperly admitted into evidence the city ordinances regarding the offense and punishment. He contends there was no evidence presented that the ordinance had not been modified, amended, or repealed; no evidence that the ordinances contained an enabling provision as directed by 11 O.S. 1971, § 961.11; no evidence that the ordinances were passed by a majority of city counsel members; no evidence that the City Seal was affixed to the ordinances as directed by 12 O.S.1971, § 493; and other arguments relating to possible modification of the ordinances. Defendant does not argue that the above possibilities occurred; just that the prosecutor failed to prove that they did not occur. The main authority as cited by defendant, *Johnson v. City of Tulsa,* 97 Okl.Cr. 85, 258 P.2d 695 (1953), states in the third paragraph of the Syllabus as follows:

"In an appeal to this court where a consideration of a municipal ordinance is re-

quired, such ordinance must be reflected in the record, either by way of introduction in evidence in the trial court in accordance with and as provided by Tit. 12 O.S.1951, § 493, or set forth verbatim by the municipal court or court trying the case de novo, during trial, or in its findings, in judgment rendered, or the wording must have been agreed to by the parties and stipulation entered in the record during trial."

Typed copies of the two ordinances, each certified by the Assistant City Clerk, appear in the transcript (Tr. 153, 154), apparently as evidence of the originals which were introduced at trial (Tr. 18). It will be noted that when the ordinances were introduced at trial, defendant offered only a general objection. He did not complain then, and does not complain now, that his objections to the ordinances actually occurred. In light of defendant's general objection and lack of evidence of prejudice to him, we dismiss this assignment of error as harmless error, if error at all. Title 20 O.S.1971, § 3001. *Thompson v. State,* Okl. Cr., 453 P.2d 314 (1969).

■ In his fourth assignment of error defendant contends that the prosecutor failed to establish that the offense occurred within the city limits, by arguing that no maps, ordinances or testimony were transmitted to this Court to prove the venue question.

As authority he cites *Goeppinger v. State,* Okl.Cr., 414 P.2d 313 (1966), which says in Syllabus number four:

"Testimony of city police officers in municipal criminal court prosecution that offense of being in actual physical control of a motor vehicle while under influence of intoxicating liquor occurred on certain streets in the city of Tulsa, did not satisfy requirement that record reflect the offense occurred within corporate limits, for lack of proper showing of ordinance fixing limits. 12 Okl.St.Ann. § 493; 47 Okl.St.Ann. § 11–902."

However, *Goeppinger* goes on to cite with approval *Sawyer v. State,* Okl.Cr., 395 P.2d 589 (1964), which held that:

" . . . In order to sustain a conviction for a violation of Title 47 O.S. § 11–902, it is incumbent for the record to reflect that the offense occurred within the corporate limits of the City of Tulsa. The boundaries of the corporate limits of the City of Tulsa are fixed by the duly enacted ordinances of that City, and while it has been generally held that the trial Judge of a Municipality may take judicial notice of City Ordinances, it has also been uniformally held that the Court of Criminal Appeals will not take judicial notice of Municipal Ordinances; but that the Ordinance, or Ordinances, must be reflected in the record, either by way of introduction in evidence in the trial court in accordance with and as provided by Title 12 O.S.1951, § 493, or set forth verbatim by the Municipal Court or Court trying the case de novo, during trial, or in its findings, in judgment rendered, or the wording must have been agreed to by the parties and stipulation entered in the record during trial. . . . " (Citations omitted)

William Barthel, zoning technician for the city, was declared an expert witness and testified that the 7500–7800 blocks of South Shields are within the city limits, and the annexation ordinance (No. 6477) pertaining to that area was introduced in evidence. (Tr. 135)

Early in the trial the prosecutor offered into evidence "a certified copy of the City Annexation Ordinance making those areas in question within the corporate limits of the City of Oklahoma City." (Tr. 14) Defendant objected to said introduction, and the record reflects an off-the-record discussion, and then defendant's motion was overruled.

Officer Ed Smith testified that "the area in which the violation took place and where the subsequent arrest occurred is in the corporate limits of this City." (Tr. 16)

While the ordinance does not appear of record, it was properly introduced. This Court held in the recent case of *Hanna v. State,* Okl.Cr., 560 P.2d 985 (1977), that it is the duty of the appellant to see that the

record filed is complete, and that where this is not done the assignment of error is dismissed. We therefore dismiss this assignment of error.

In his fifth assignment of error defendant contends that the trial court erred when it admitted into evidence the result of the breathalyzer test given defendant. This assignment has five subsections with which we will deal separately.

■ (A) The prosecutor did not prove the test was performed on a machine approved as required by law.

The officer who administered the breathalyzer test testified the machine used was a model 900, and, over objection of defendant, said that model is recognized by the State Board of Chemical Tests for Alcohol Influence. Defendant in his brief argues that the proper identification of the breathalyzer machine is a "Model 900 or model 900A Breathalyzer apparatus used in association with the Model 6000 or Model Mark II Alcoholic Breath Simulator." (Rules of State Board of Chemical Tests as quoted by defendant.) Defendant did not cross-examine the officer regarding his identification of the breathalyzer and offered no evidence in rebuttal. We therefore find the officer's identification is in substantial compliance with the Board's rules, and so dismiss this argument.

■ (B) The prosecutor did not prove that the defendant was properly observed for a 15 minute period prior to the breathalyzer test as required by the State Board of Chemical Tests.

Testimony indicated that the test administrator did not observe the defendant for the required 15 minutes, but the arresting officer did (Tr. 17–18).

The Board requirement itself, as quoted by the defendant in his brief, is as follows:

"(a) The procedure for each such analysis shall include the following:

"(1) Continuous observation of the subject whose breath is to be tested for a period of at least fifteen (15) minutes prior to the collection of the breath speci-

men, during which period the subject shall not have ingested alcohol or alcoholic beverages, regurgitated, or vomited."

The arresting officer said that he was with the defendant for about 45 minutes prior to the test, and during that time the defendant did not smoke, chew gum, vomit, regurgitate, or have any foreign substance in his mouth. He said he was aware of the 15 minutes deprivation period required, and that "During this period, he had nothing as he was seated in the back seat of the scout car." (Tr. 18)

We find the requirement for a 15 minute observation period has been met.

■ (C) The prosecutor failed to prove that the officer who administered the breathalyzer test, Ted Carlton, had a valid permit to operate the breathalyzer machine as provided in 47 O.S.1971, § 759.

The officer testified that the State Board of Alcoholic Tests issued him a "permanent number," No. 1858, which "allows me to perform both the operation of the breath-a-lizer (sic) test and supervision and technical maintenance of the breath-a-lizer (sic) instrument, reference and solution change in twenty-five tests or less." (Tr. 96)

We find this to be in compliance with the statute.

■ (D) The court erred when it ruled that the defendant bore the burden of establishing that the rules and procedures set down by the State Board of Chemical Tests had not been followed, citing *Westerman v. State,* Okl.Cr., 525 P.2d 1359 (1974).

*Westerman* said failure to comply with breathalyzer test rules promulgated by the State Board of Chemical Tests invalidates the test, and the burden of showing the rules were complied with rests with the State. In *Westerman,* however, we reversed the trial court because the officer administering the test did not know which set of rules he was following and was unable to say the maintenance requirement for the breathalyzer had been complied with. Such is not the case here. Officer Carlton testified that he followed the current rules on procedure (Tr. 91–92, 124), and

maintenance had been complied with, the last solution change being one and a quarter hours before the defendant was tested (Tr. 91, 117).

Further, a close reading of the transcript reveals the trial judge asked the defendant for specific objections—rather than general objections—to the test procedure and if defendant could not bear that burden the court would rule the Board procedures had been followed (Tr. 88). We thus dismiss this argument.

(E) The administering officer did not follow the steps required by the Board procedure rules by failing to personally observe the defendant for a 15 minute deprivation period prior to the test and by failing to complete step number seven ("blank analysis") on the procedure form.

We have answered defendant's first objection, and so dismiss it.

Regarding the second objection, defendant objects on grounds that Officer Carlton, although testifying to the different operations in step number seven, never specifically testified that he actually carried it out. (Tr. 93–94) Defendant did not cross-examine on that point, and did not object at trial.

However, later in the trial Officer Carlton testified that he did in fact perform step number seven, the second blank analysis. (Tr. 111) Further, he testified he followed all procedures and so indicated on the test form. (Tr. 113–114)

We therefore dismiss this assignment of error.

As his sixth assignment of error, defendant argues that the trial court erred when it allowed into evidence a statement by defendant without proof of *Miranda* warning and without holding an in camera hearing to determine the admissibility of the statement.

The admission occurred during the following exchange between the prosecutor and Officer Smith, the arresting policeman:

"Q. Did anything else transpire between you and the Defendant while you had him in custody? For examples, did he make any statement to you?

"A. He stated he knew he had been drinking, however, he hadn't had that much to drink, and he knew he wasn't drunk." (Tr. 9–10)

Defendant objected at that point on grounds the answer was not responsive and a proper predicate had not been laid.

However, Officer Smith testified he had twice informed the defendant of both his constitutional *Miranda* rights and the chemical test request prior to defendant's statements, and that defendant said he understood both sets of rights. Further, defendant did not request an in camera hearing, and did not offer a motion to suppress the statement.

■ Defendant also argues that the *Miranda* warning given him was incomplete because it did not say he could stop his statement at any time. Defendant cites *Tice v. State*, Okl.Cr., 478 P.2d 916 (1970). But *Tice*, in enumerating the *Miranda* rights, does not contain the above warning:

" . . . In *Miranda* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], the United States Supreme Court spelled out that a defendant must be apprized of the following rights; 1. that he has a right to remain silent; 2. that any statement he does make may be used as evidence against him; 3. that he has a right to the presence of an attorney either retained or appointed; and 4. that if he cannot afford an attorney one will be appointed for him prior to any questioning, if he so desires." 478 P.2d at 921

In *Miranda* itself we find no such required warning:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. . . . " 384 U.S. at 478–479, 86 S.Ct. at 1630.

Although elsewhere in the *Miranda* opinion the Court indicates that "once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." (384 U.S. at 473–474, 86 S.Ct. at 1627, footnote omitted) However, the Supreme Court did not require this as one of the rights to be read a defendant. It is simply intended as procedure to be followed by law enforcement officials.

*Miranda* speaks specifically to "*questioning initiated by law enforcement offic[ials]*" (384 U.S. at 444, 86 S.Ct. at 1612, emphasis added), and later adds that:

" . . . Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed *to talk* to the police without the benefit of warnings and counsel, but whether he can be *interrogated*. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. at 478, 86 S.Ct. at 1630 emphasis added.

■ In the case at bar there is no indication that the statement by defendant was anything but voluntary, in the nature of an excuse given a policeman so he won't write a ticket. In addition we note the defendant did not request an in camera *Jackson-Denno* hearing on the admissibility of the statement, and did not object on *Miranda* grounds during the trial.

We therefore find this assignment of error to be without merit.

 In his final assignment of error, defendant contends the punishment is excessive and should be reduced. We disagree, noting the sentence of 90 days in jail and the $300.00 fine is within the limits of the ordinance, and does not shock the conscience of this Court. We therefore find this assignment of error to be without merit.

For the reasons stated above, the judgment and sentence is hereby *AFFIRMED.*