Jack Roger LANE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–333.

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1977.

Rehearing Denied Jan. 9, 1978.

Valdhe F. Pitman, Eufaula, for appellant.

Larry Derryberry, Atty. Gen., Julia T. Brown, Asst. Atty. Gen., for appellee.

OPINION

BRETT, Judge:

Appellant, Jack Roger Lane, hereinafter referred to as defendant, was charged in the District Court, McIntosh County, Case No. CRF–76–38, with the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2. The case was tried to a jury, and a guilty verdict was returned. A mandatory sentence of ten (10) years to

life imprisonment was imposed. From said judgment and sentence defendant has perfected a timely appeal to this Court.

Defendant was charged with killing his wife, Karen Fern Lane, with a shotgun in their mobile home on June 10, 1976. Two neighbors of defendant, John West and Lydia Gilbert, observed defendant arrive home in his jeep at about 6:30 p. m. on that date. West testified that he observed defendant drive up and enter defendant's mobile home. Thereafter he heard noises and loud voices coming from the mobile home, and subsequently heard two gunshots. West called the sheriff, and then observed the defendant leave in the jeep. The witness went over to defendant's mobile home and observed Karen Lane lying on the ground in the yard. Lydia Gilbert testified that she was working in her garden on the date and time aforesaid, which garden adjoins defendant's yard, and that she observed defendant arrive home and enter his mobile home. Defendant then called his wife, who had been in the yard with their two small daughters. The witness testified that as Karen Lane approached the mobile home the Lane's two daughters ran over to the witness and stated "my daddy is going to kill our mommy." Thereafter, the witness observed that as Karen opened the door to the mobile home defendant struck her in the head with his fist and she fell inside the door. Shortly thereafter, the witness heard a scuffle and then a gunshot. Karen then exited the mobile home bleeding, and defendant came out after her, holding a gun. Karen walked about ten feet, defendant called her name and she turned around and walked back a few steps toward the porch, where she collapsed. Defendant then told the witness to get a doctor and fired over her head when she did not move. The witness then left and called the sheriff, and defendant left in his jeep.

Jimmy Nixon, Eufaula police officer, was dispatched to the defendant's home by the sheriff's office. On the way he picked up Tom Bevans, a security guard. They then encountered defendant in his jeep and both the witness and defendant brought their vehicles to a halt, at which point defendant was arrested. In the jeep was a .20 gauge sawed-off shotgun, State's Exhibit No. 1.

Ray Kirkpatrick, Deputy Sheriff, found two empty .20 gauge shotgun shells at the scene of the homicide, one in the mobile home and one outside. Donald Beaver, Sheriff of McIntosh County, testified as to the chain of custody of some of the evidence. Dr. Bellamy, pathologist, stated that Karen Fern Lane died from a single shotgun blast to the abdomen. Numerous pellets and a shotgun wadding were recovered from the body and turned over to authorities. Carl Cloud, firearms examiner for the Oklahoma State Bureau of Investigation, received the gun and the pellets and the shotgun shells and performed various tests thereon. By examining the blouse which deceased was wearing in conjunction with the tests which he performed on the shotgun, he was able to determine that if the shotgun were the murder weapon, deceased was standing from three to five feet from the end of the barrel at the time the shot was fired. However, Cloud stated that his tests were inconclusive as to whether or not State's Exhibit No. 1, the shotgun seized at the time of defendant's arrest, was the murder weapon.

Defendant took the stand in his own behalf and testified that when he arrived home he called his wife to ask her if he had any clean shirts. Defendant further testified that he had just come from town where he had been playing pool and drinking a few beers, and that when he informed his wife that he was going back for the same reason she became angry. She went into the bedroom and he turned to get a drink of water. When he turned around she was pointing the shotgun at him, and she told him he was not going back into town. He approached her and grabbed the shotgun, and a tugging match ensued. In the process of wrestling the gun from her he stumbled, fell back and the gun went off. His wife then walked out the door and he followed, not aware that he had shot her until she turned around. He then told Mrs. Gilbert to call a doctor, but she hesitated so he fired a shot into the air to make her hurry.

Further, he twice tried to call the sheriff but the line was busy so he left in his jeep in order to summon aid for his wife. Defendant also denied sawing off the barrel or the stock of the shotgun, to the point where it was illegal, although he admitted that he had once sawed off a few inches of the barrel.

On rebuttal, Eugene Doyle testified that defendant told him he planned to cut off the barrel to a length of 13 inches. The witness testified that he informed defendant that it was a crime to do so, but defendant stated he was going to do so anyway.

■ Defendant contends in his first assignment of error that the trial court committed reversible error in overruling his demurrer to the wording of the information. We decline to consider this contention inasmuch as it was not properly preserved. Title 22 O.S.1971, § 503, states:

"Both the demurrer and the plea must be put in open court, either at the time of the arraignment or at such time as may be allowed to the defendant for that purpose."

Defendant filed a written demurrer to the information and apparently argued it to the preliminary magistrate, who overruled it. Thereafter, but prior to formal arraignment, defendant presented and argued his motion to quash the preliminary hearing or set aside the information. This motion was heard by the Honorable Marshall Warren, who also presided at the trial of this cause. A full transcript of the argument on this motion was provided this Court. It reveals that the basis of defendant's motion to quash the preliminary hearing was that there was insufficient evidence to bind defendant over for trial on a charge of second degree murder. The Honorable Marshall Warren overruled defendant's motion to quash the preliminary hearing.

Thereafter, defendant was arraigned on the charge. Again, a transcript of the proceedings on arraignment was provided this Court. The transcript reflects that no specific mention was made to the trial court concerning defendant's demurrer to the information, although defense counsel did make general assertions that he was not waiving any of defendant's rights in reference to any proceedings or motions theretofore had. Subsequent to arraignment, the record reveals that defendant never brought his demurrer to the court's attention. At trial it was not mentioned and it was not assigned as error in the motion for new trial or in the petition in error.

This Court has often stated that defects in the information, except those that go to jurisdiction such as the sufficiency of facts stated to constitute a public offense, are waived if they are not presented prior to trial. See, *Wright v. State,* Okl.Cr., 505 P.2d 507 (1973); *Crane v. State,* Okl.Cr., 461 P.2d 986 (1969); *Edwards v. State,* Okl.Cr., 307 P.2d 872 (1957); and, *Cotton v. State,* 22 Okl.Cr. 252, 210 P. 739 (1922). Further, this Court has held that merely filing a written demurrer is not enough. Rather, it must be brought to the attention of the court and actively urged. See, *Pitts v. State,* 96 Okl.Cr. 178, 251 P.2d 527 (1952).

It is well recognized that rulings made by the preliminary magistrate are not binding upon the trial court. The foregoing considered, we are of the opinion that it was insufficient to merely argue the demurrer to the examining magistrate. Rather, it should have been presented and argued to the trial court sometime prior to trial, "either at the time of arraignment or at such other time as may be allowed to the defendant for that purpose." Title 22 O.S.1971 § 503. Since it was not, and since the alleged infirmity in the information is not such as to affect the jurisdiction of the court, the alleged error, if any, was waived.

■ Defendant's second and fourth assignments of error contend that the court's instructions to the jury were erroneous. The record reflects that as to all instructions defendant objected in only a very general way. This was not sufficient. Defendant should have stated specifically why he objected to the instructions and, further, should have submitted proposed instructions to the court in writing, in lieu of the instructions which he deemed objectionable.

Where this is not done and where, as in the instant case, the instructions actually given by the court fairly and accurately stated the applicable law, alleged errors in the instructions cannot be raised for the first time on appeal. See, *Jaggers v. State,* Okl. Cr., 549 P.2d 384 (1976).

■ Defendant's third assignment of error also complains of instruction number 17, but here a written instruction was submitted by defendant. The instruction given by the court dealing with flight is as follows:

"You are instructed that evidence has been offered tending to show flight by the defendant should affect the commission of the crime alleged against him in the Information.

"If you find from the evidence that the defendant did, at some time, flee from the place of the offense and that such flight was induced by his apprehension of being arrested of an offense, this is a cricumstance (sic) to be considered by you in connection with all the other evidence to aid you in determining the guilt or innocence of this defendant."

Defendant's contention concerning this instruction is that it fails to state that the jury could consider defendant's explanation of his departure from the scene in determining whether the departure constituted "flight."

In *Ward v. State,* Okl.Cr., 444 P.2d 255, 259 (1968), this Court approved the following instruction dealing with flight:

" 'You are instructed that evidence has been offered tending to show flight by the defendant shortly after the commission of the crime alleged against him in the information. If you find from the evidence that the defendant did at some time flee from the place of the commission of such alleged crime, and that such flight was induced by his apprehension of being charged with a public offense by reason thereof, this is a circumstance to be considered by you, in connection with all the other evidence, to aid you in determining the question of his guilt or innocence.' "

We are of the opinion that the instruction given by the court, though by no means a paradigm of legal writing, was substantially correct. It instructed the jury that if they found from the evidence that the defendant fled out of fear of arrest or apprehension then this was a circumstance to be considered in their determination of defendant's guilt or innocence. The instruction by its terms did not assume that defendant's departure was for purposes of fleeing prosecution or for any other reason, but rather clearly left that question to the jury for their determination upon the facts and evidence presented. This being so, then it was not error to refuse to give defendant's requested instruction, which only stated the same in a manner no more clear or grammatically correct than the instruction actually given by the court.

For the foregoing reasons the judgment and sentence appealed from is *AFFIRMED.*

BUSSEY, P. J., and CORNISH, J., concur.