Michael Lee **COLLUMS, Appellant,**

v.

The **STATE of Oklahoma, Appellee.**

No. F–82–418.

Court of Criminal Appeals of Oklahoma.

Feb. 8, 1985.

John Thomas Briggs, George G. Briggs, Pawhuska, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

The appellant, Michael Lee Collums, was charged in the District Court of Wash-ington County, Case No. CRF–81–195, with Murder in the First Degree, in violation of 21 O.S.1981, § 701.7 B, and Arson in the First Degree, in violation of 21 O.S.1981, § 1401. He was convicted of the former offense but acquitted of the latter. The jury returned a sentence of life imprisonment.[1] We affirm the judgment and sentence of the District Court.

Sometime around midnight on July 1, 1982, two men burglarized the home of Evelyn Cascone near Vera, Oklahoma. In the course of the burglary 16-year-old Michelle Marie Westendorf, a house guest of Mrs. Cascone, was killed, and the house was set on fire. The blaze was discovered by Mrs. Cascone on her return home from work. During efforts to extinguish the fire, the scantily clad body of Miss Westendorf was discovered in a hall closet. She had been shot five times in the chest, and a subsequent autopsy revealed she was alive after the fire started.

According to the testimony of Rick Payne, he and the appellant were in the Vera area when appellant decided they should burglarize a home. Appellant said he knew the Cascone residence would be empty because he had once dated Mrs. Cascone's regular housesitter.

When appellant and Payne arrived at the home, they discovered Miss Westendorf was there alone, according to Payne's testimony. Miss Westendorf was placed in a hall closet, and the pair burglarized the residence. After loading the stolen goods in appellant's car, the house was set on fire by appellant. Payne said appellant then went back into the house. According to Payne, appellant returned to the car and told Payne Miss Westendorf had been killed.

1. The State filed a Bill of Particulars seeking the death penalty. The State alleged as aggravating circumstances that (1) the murder was especially heinous, atrocious, or cruel; (2) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and, (3) the existence of a probability that the defendant would commit future acts of violence that would constitute a continuing threat to society. The jury found all three aggravating circumstances, but also listed as a mitigating circumstance its belief the proof did not show beyond a reasonable doubt that appellant actually killed Miss Westendorf. This finding is not inconsistent with the jury's verdict of guilt, however, as appellant was charged with felony-murder (first degree burglary) pursuant to 21 O.S. 1981, § 701.7 B.

The appellant testified in his own behalf that he traveled to Vera with Payne in order to see a girl he was dating. When appellant stopped at the Cascone residence to inquire about the girl, he found Miss Westendorf there alone. When Payne was told Miss Westendorf was the only person there, Payne decided they should burglarize the residence.

Appellant said he cooperated in the burglary only because Payne was high on drugs and he was afraid of Payne. Appellant testified he had nothing to do with Miss Westendorf's death and had, in fact, prevented a rape attempt by Payne. It was Payne who set the house on fire, according to appellant.

Evidence at the trial placed both men in the Vera area that night. It also was shown that both men attempted to sell the stolen property.

## I.

Appellant first contends the trial court reversibly erred when it had a discussion with the jury outside the presence of appellant and his attorney. We do not agree that the action of the trial court, in this instance, constituted reversible error.

The record reveals that after deliberations had commenced, the jury was returned to the courtroom to make arrangements for sequestration at a local motel. One of the jurors requested a copy of the instructions to read over the evening recess. The trial judge responded:

THE COURT: Yes. Just don't discuss them among yourselves out there. But you can take them and read them, because that will save some time tomorrow.

The trial court reiterated its position:

THE COURT: I don't think there is anything wrong with that, as long as they don't discuss it. It would save some time tomorrow.

When trial counsel learned of this encounter, he objected and moved for a mistrial. The motion was denied.

■■■ In *Goodson v. State*, 562 P.2d 521 (Okl.Cr.1977), we were faced with a similar issue. In that case the trial court answered a question that had arisen among the jurors. We held that the trial court's discussion with the jurors did not merit reversal, and noted:

Title 22, 1971, Oklahoma Statutes, Section 894 establishes the procedure for dealing with such situations. By its language the statute clearly indicates that the defendant or his counsel must be present, or at least, must have been notified of the occurrence. A violation of this statute creates a presumption of prejudice, which must be rebutted by the State. However, we have held in *Worchester v. State*, Okl.Cr., 536 P.2d 995 (1975) that the presumption of prejudice may be overcome if on appeal this Court finds upon examination of the record that no prejudice occurred. Since the defendant was only given the minimum punishment, and since the trial court in responding to the jury's question in no way altered its instructions, we find that no prejudice had occurred. There being no prejudice, then by 20 O.S.1971, § 3001 [now 20 O.S.1981, § 3001.1] Harmless Error.

We believe the rule expounded in *Goodson v. State* is applicable to this case. It is readily apparent from this record that appellant suffered no prejudice from the court's conversation with the jury. Trial management is a matter falling within the sound discretion of the trial court. *Cf. Johnson v. United States*, 618 F.2d 60 (9th Cir.1980). We have found nothing in the law prohibiting a jury from receiving copies of the instructions to study over the recess, so long as the jury is instructed not to discuss the case or the instructions over the recess. Because the trial court's actions were not improper, we cannot find prejudice in the judge's comments. This assignment of error is without merit.

## II.

■■■ Next, appellant contends the trial court erred in failing to grant his motion to sequester the jury during trial. In support of this assignment of error, appellant as-

serts the jury was prejudiced by news accounts of the trial. He points specifically to an article in a "detective magazine", which refers to the case. This magazine, appellant claims was found in an area of the courthouse frequented by the jurors.

We have previously held that whether or not to invoke the rule of sequestration, prior to final submission to the jury, is a matter in the discretion of the trial court. 22 O.S.1981, § 853. *See also Carson v. State,* 529 P.2d 499 (Okl.Cr.1974). An abuse of discretion will be found only where appellant shows, by clear and convincing evidence, that (1) the jurors were specifically exposed to media reports which (2) were prejudicial to the defendant. *Tomlinson v. State,* 554 P.2d 798, 804 (Okl.Cr. 1976).

■ Appellant has wholly failed to meet this burden. Of the media reports alleged, only one was included in the record by appellant. This report, found in the aforementioned "detective magazine", was somewhat prejudicial to appellant. However, there is no showing that any of the jurors were specifically exposed to it, as required by *Tomlinson.* Further, the trial court faithfully and continually admonished the jury not to read or listen to any reports of the trial. That the jury acquitted appellant on one of the two charges reflects the seriousness which permeated the deliberation process. This assignment of error is without merit.

### III.

■ Appellant next contends he was denied a fair and impartial trial by allegedly biased and prejudicial comments made by the trial judge in the presence of the jury. However, the comments of the trial judge become improper only when they are taken out of context, as appellant has done. This assignment of error is rejected as patently frivolous.

### IV.

■ Appellant also contends his constitutional right to a fair and impartial jury was violated in this capital case when the prosecution was permitted to challenge for cause those jurors with conscientious objections to the death penalty.

This contention must fall for two reasons. *First,* as the Tenth Circuit Court of Appeals explained in *Brinlee v. Crisp,* 608 F.2d 839 (10th Cir.1979):

In *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, the Supreme Court held that 'a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.' (*Id.* at 522, 88 S.Ct. at 1777). However, in *Bumper v. North Carolina,* 391 U.S. 543, 545, 88 S.Ct. 1788, 20 L.Ed.2d 797, the Court held that the decision in *Witherspoon* does not apply where only a life sentence is recommended by the jury. *See also Witherspoon v. Illinois, supra* 391 U.S. at 522–23, n. 21, 88 S.Ct. 1770; *Redford v. Smith,* 543 F.2d 726 (10th Cir.); *Sinclair v. Turner,* 447 F.2d 1158 (10th Cir.), *cert. denied,* 405 U.S. 1048, 92 S.Ct. 1329, 31 L.Ed.2d 590. Here the jury set the punishment at imprisonment at hard labor for life, (V R. 478; *see* 21 O.S.1971, § 707), and a life sentence was imposed. (*Id.* at 494). We therefore hold that under *Bumper* and the other cases cited this claim of appellant lacks merit.

608 F.2d at 848.

*Second,* appellant's contention that the jury drawn was conviction-prone, and was not drawn from an adequate cross-section of the community is not supported by any evidence in the record. *Nuckols v. State,* 690 P.2d 463, 55 O.B.J. 2259, 2261–62 (Okl. Cr.1984). *See also Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

### V.

■ It is asserted in appellant's fifth and sixth assignments of error that the trial court erred in failing to give instructions

on voluntary intoxication, and the lesser included offenses of manslaughter in the first degree and murder in the second degree. We disagree.

We note at the outset that appellant failed to present any written requested instructions covering these areas of law. *See Lane v. State,* 572 P.2d 991, 993–94 (Okl.Cr.1977). Moreover, we have repeatedly held, "[w]hen a defendant, who has a right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one." *Wiley v. State,* 551 P.2d 1146, 1150 (Okl.Cr.1976). *See also Seegars v. State,* 655 P.2d 563, 565 (Okl.Cr.1983).

In this case the appellant testified he had nothing to do with the killing of Miss Westendorf, or the arson at the Cascone residence. He claimed his participation in the burglary was induced by fear of Rick Payne, and the jury was accordingly instructed on the defense of duress. This assignment of error is without merit.

The judgment and sentence is AFFIRMED.

PARKS, P.J. and BUSSEY, J., concur.