**Booker T. SHEPARD, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–85–116.

Court of Criminal Appeals of Oklahoma.

May 12, 1988.

Michael C. Turpen, Atty. Gen., Jean M. LeBlanc, Asst. Atty. Gen., Oklahoma City, for appellee.

Gloyd L. McCoy, Asst. Appellate Public Defender, Norman, for appellant.

## OPINION

BUSSEY, Judge:

The appellant, Booker T. Shepard, was convicted in the District Court of Okmulgee County, Case No. CRF-84-24, of the crime of Larceny of Domestic Animals (cattle) After Former Conviction of Two or More Felonies. He was sentenced to fifty (50) years imprisonment and brings this appeal.

The facts disclosed by the record reveal that on February 7, 1984, M.C. Montgomery, a farmer, went to his pasture where he kept cattle. He found the lock on the gate broken, tire tracks leading to the loading chute, broken boards in the chute, and five of his cows missing. He contacted the Okmulgee County Sheriff's Department. By the time a deputy arrived to investigate, two of his cows were found at the Tulsa Stockyards. They had been checked in by appellant.

The following day, a warrant was issued in Okmulgee County for the appellant's arrest. At appellant's residence in Tulsa, blood was observed on the ground leading from a trailer to appellant's back door. Tulsa County Deputy Moody served the arrest warrant on appellant at the front door and went inside because other voices had been heard inside the house. Prior to entering, he observed a cow's head in the sink in plain view. Through an open door from the kitchen, four quarters of beef could be seen hanging from rafters in the garage. Receipts for cattle from the Tulsa stockyards were laying on a table in the kitchen. Appellant was taken to the Tulsa County jail, and transported to Okmulgee County on the following day.

Appellant was found guilty of Larceny of Domestic Animals (cattle) by a jury. He stipulated to three prior felony convictions. The jury could not agree on the punishment, and sentence was subsequently rendered by the court. After denial of motion for new trial, this appeal was brought.

As his first proposition, appellant asserts that the evidence at trial was insufficient to support a conviction. When the evidence, as viewed in the light most favorable to the prosecution, is such that a reasonable jury could find all essential elements of the crime charged beyond a reasonable doubt, then this Court will not reverse on grounds of insufficiency of the evidence. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985).

■ One of the elements of the crime of Larceny of Domestic Animals is taking the animals. Appellant contends that although there was evidence of sale and possession in Tulsa County, there was no evidence that appellant had taken the cows from Okmulgee County. It is well established that a criminal case may be proved circumstantially, and reasonable inferences drawn therefrom have the same probative effect as direct testimony. *Collins v. State*, 561 P.2d 1373 (Okl.Cr.1977). Circumstantial evidence in this case included stolen cattle found at the stockyards and sold by appellant. Appellant made certain that all money representing proceeds of the sale was sent directly to him by naming himself as owner on the drive-in slips. Testimony was offered to show that the cattle had been taken with a truck and trailer, and that appellant used his truck and a trailer to deliver cattle to the stockyards. Appellant's story about another truck and a man who claimed to be the owner of the cattle is inconsistent and wholly uncorroborated, and appellant's testimony was impeached during cross-examination. A reasonable jury could find from this that appellant had taken the cattle, and the verdict will not be reversed for lack of sufficiency of the evidence. *Jackson v. Virginia, supra; Spuehler supra.*

■ Appellant next asserts that his conviction should be reversed on grounds of improper conduct by the prosecutor. We first note that no objection was raised contemporaneously with most of the alleged misconduct, and any error was therefore

waived absent a showing of fundamental error. *Roberts v. State,* 568 P.2d 336 (Okl. Cr.1977). Furthermore, in the one instance in which an objection was raised, it was properly sustained to exclude hearsay evidence. No request was made to have the jury admonished, and no motion for mistrial or other relief was made. This Court is unaware of authority requiring reversal where the trial judge properly sustains an objection by defendant, and we do not reverse on this assignment.

■ The appellant asserts that reversal is required because the form of the verdicts at the sentencing stage was ambiguous and did not give the jury an option to assess punishment without finding former convictions. The assignment is without merit. First, this Court has long held that in cases such as the one at bar, where the defendant has admitted his prior convictions, "there is no factual question for the jury of whether a defendant is guilty of the primary offense or the offense charged after former convictions. *Jones v. State,* 527 P.2d 169 (Okl.Cr.1974)." *Hanson v. State,* 716 P.2d 688, 690 (Okl.Cr.1986).

Second, appellant relies upon the bald assertion that the jury didn't understand the form. He points to nothing in the record showing any confusion on the part of the jury, nor does he give specific, relevant authority on which reversal is required. This Court will not search for authority to support appellant's assignments of error.

Finally, no objection was raised as to the form of the verdicts. Therefore, any error that may have existed has been waived. *Williams v. State,* 542 P.2d 554 (Okl.Cr. 1975).

■ Appellant next asserts that fundamental error occurred because the trial judge was biased against appellant and allowed the bailiff to read the instructions to the jury. We first note that management of the trial is a matter for the sound discretion of the trial judge. *Collums v. State,* 695 P.2d 872 (Okl.Cr.1985). Appellant argues that bias was demonstrated when the trial judge criticized defense counsel's actions. We note that these criticisms were made outside the presence of the jury. They did not show any bias concerning the outcome of the case, but merely reflect that the judge wanted to move along so that the jury would not wait all morning before the trial began. A judge's honest efforts to expedite the trial are permissible so long as they do not operate to prejudice the defendant's rights. *Gamble v. State,* 576 P.2d 1184 (Okl.Cr.1978).

■ Appellant also urges reversible misconduct when the judge interrupted defense counsel's cross-examination of a State witness. In *Lott v. State,* 586 P.2d 70 (Okl.Cr.1978), we held that a trial judge may interrupt questioning to clarify testimony or halt improper examination. Here, the court did nothing more than clarify. Furthermore, there was no error as the questions in no way demonstrated the judge's opinion on the appellant's guilt, *Banks v. State,* 578 P.2d 370 (Okl.Cr.1978), and all error not of a fundamental nature was waived when no objection was raised. *Lott, supra.*

■ Reading of the instructions by the bailiff also does not amount to reversible error where it was a matter within the trial judge's discretion in the management of the trial, *Collums, supra.* The judge was present to answer and rule on any matter of law that might arise, and defense not only failed to object, but specifically assented to that manner of giving instructions. This assignment of error must fail.

Next, appellant asserts that certain evidence should have been suppressed at trial. His argument relies primarily on perceived improprieties in the arrest. Appellant does not seek reversal on the grounds of an unlawful arrest. As we find that the evidence was admissible as lawfully obtained under the plain view exception to the search warrant requirement, we address the improprieties of the arrest only insofar as it is necessary to show the officer's right to be in the place where the items were seen.

In *Tucker v. State,* 620 P.2d 1314 (Okl. Cr.1980), this Court in a unanimous decision set out the requirements for evidence

seized to fall within the plain view exception. They are: 1) it must be immediately apparent that the items are evidence of a crime; 2) the officer must have had prior justification for being in the place where the items were seen and have a legal right to be there; and 3) discovery of the evidence must have been inadvertent. The items in question in this case were a cow's head, four quarters of beef, and some "drive-in" slips from the Tulsa stockyards. There is no question that these items would appear to be evidence of the crime of Larceny of Domestic Animals when the officers were at the location to make an arrest for that charge.

■ By contesting certain features in the arrest, appellant seems to contend that the officer had no legal right to be in the place from which he saw the items. The contention is without merit. Title 22 O.S. 1981, § 175 provides authority for a peace officer to serve an arrest warrant which is delivered to him in any part of the State. The fact that the warrant in this case was issued by an Okmulgee County judge and served by a Tulsa County deputy did not render the arrest unlawful. The deputy had not only the right but a duty to serve the warrant on appellant, and in so doing it was proper for him to be at appellant's residence.

■ When appellant answered the door, the deputy could see a cow's head in the kitchen sink from outside the house. When the deputy went into the house, he also saw the beef through an open door to the garage, and the "drive-in" slips which were laying in the open on the kitchen table.

In none of these acts did the deputy go beyond his right to be in a place from which the items seized were in plain view. His purpose in going to the residence was to make an arrest, not to look for cows. Observation of the items in question was purely inadvertent, and seizure was proper under the plain view doctrine. As there was no impropriety in seizing the items, the trial court properly refused to suppress them from evidence.

■ Appellant asserts that he should be given a new trial on grounds that he was denied due process by ineffective assistance of counsel. To prevail on this argument, he must show that: 1) his counsel's performance was deficient, and 2) that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiencies, appellant relies exclusively on counsel's failure to object at various points in the trial and sentencing hearing. While failure to object may rise to the level of ineffective assistance of counsel, *Aycox v. State*, 702 P.2d 1057 (Okl.Cr.1985), such a failure often will not be conclusive. *See Roberts v. State*, 568 P.2d 336 (Okl.Cr. 1977). The test set forth in *Strickland*, supra, is whether the errors were so great as to render the results of the trial unreliable. We hold that trial counsel's conduct was not so deficient as appellant argues in his brief. Most of the objections that have been raised in the brief would have been properly overruled, and those that should have been sustained would have amounted at most to harmless error had the ruling been incorrect. The evidence was more than sufficient at trial to sustain the conviction, and the notion that the sentence imposed would have been less is mere speculation, especially in light of the confessed convictions of the same crime on numerous occasions in the past. We are of the opinion that the result was reliable; therefore, this contention is denied.

■ Appellant raises several assignments concerning the severity of his sentence. First, he argues that under 21 O.S. 1981, § 51(B), the prior convictions used for enhancement "arose out of the same transaction or occurrence or series of events closely related in time and location...." The law on this point is clear. In *Bickerstaff v. State*, 669 P.2d 778, 780 (Okl.Cr. 1983), this Court stated:

> In the instant case, the appellant would ... receive a benefit if the convictions arose out of the same transaction.... Defendants cannot receive this benefit without offering evidence whether the prior convictions were closely related.

As the appellant presented no such evidence ..., this assignment of error is without merit.

Appellant in this case similarly failed to put on evidence tending to show a relationship between the crimes. Moreover, the convictions came from different counties and the informations were filed at different times. Even if *Bickerstaff, supra,* did not resolve this issue, we find the argument patently frivolous and will not consider it. *Collums v. State,* 695 P.2d 872 (Okl.Cr.1985).

▓▓▓ Appellant further argues that the trial judge failed to consider mitigating circumstances or to give credit for time served, that the length of the sentence is such as should shock the conscience of this Court, and that his sentence should therefore be reduced. We disagree. In general, when the sentence imposed is within the statutory limits, a reviewing court should not disturb it. See *United States v. Floyd,* 477 F.2d 217 (10th Cir.1973), *cert. denied,* 414 U.S. 1044, 94 S.Ct. 550, 38 L.Ed.2d 336. While it is common practice for the trial judge to give credit for time served, there is no authority mandating such credit or making it abuse of discretion to fail to give it. A sentence of 50 years does not shock the conscience of this Court where the evidence clearly showed appellant's guilt, the sentence was within the prescribed limits, and appellant had been convicted of the same offense several times in the past.

Finally, appellant seeks reversal due to accumulation of errors. As we have found no errors committed in this case, there is no accumulation which could require reversal. *Lott v. State,* 586 P.2d 70 (Okl.Cr. 1978).

Accordingly, the judgment and sentence is AFFIRMED.

BRETT, P.J., and PARKS, J., specially concur.

BRETT, Presiding Judge, specially concurring:

The problem with the majority opinion's disposal of appellant's fifth assignment of error is that the record indicates that at the time the officers went to arrest appellant at his home, they had only a valid arrest warrant and not a search warrant.

When the officers arrived at appellant's home, one went to the front door and the other went around to the back. The officer at the back door knocked, and appellant stepped outside and quickly shut the door behind him. The officer testified he saw, through the open door, a cow's head in the sink and he thought there were two people in the house. He entered the house without permission or a warrant to search for them. The officers did not serve the arrest warrant until after they were both inside the house. Appellant testified that the officers searched all four rooms, as well as the garage, the attic, and the basement. They looked inside the kitchen cabinets, the deep freeze, under the bed and between the mattress. Officer Russell confirmed this in his testimony when he testified they even looked into a tool box, "places big enough for a man to be in."

Appellant raises two claims why the evidence found inside his home should have been suppressed: 1) because the arrest warrant was illegally executed, and 2) because the State failed to justify the warrantless search of his home. I find the arrest warrant and the service of it was valid. I do not find, however, the search and seizure was lawful; the evidence was not admissible under the plain view doctrine as claimed in the majority opinion.

Although the arrest warrant was not handed over to appellant until the officers were inside the house, appellant was legally arrested on the back step of his home, with the door shut behind him. This Court has previously approved of the definition of arrest found in 6A C.J.S. Arrest § 2, which is: "[T]he taking, seizing, or detaining the person of another either by touching, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest, ..." *Castellano v. State,* 585 P.2d 361, 364 (Okl.Cr. 1978). We have also ruled that, "[w]hen a person voluntarily cooperates with the police and is free to leave, there is no arrest. If there is no manual seizure or any resist-

ance, the intentions of the parties are very important. There must be an intent to arrest by the officer and an understanding by the arrestee that submission is necessary." *Devooght v. State*, 722 P.2d 705, 708 (Okl.Cr.1986).

Appellant was subjected to the actual control and will of investigator Russell when he informed appellant that they were going to go into the house. Russell's testimony that he went to appellant's home for the purpose of arresting him and in fact was the one who arrested appellant is sufficient proof that appellant was not free to leave. *Holbird v. State*, 650 P.2d 66, 70 (Okl.Cr.1982). Because appellant was arrested outside of his home, the investigator and the deputy were not free to conduct a search of the home unless a search warrant had been issued, an exigent circumstance existed or appellant had consented to the warrantless search.

As the majority opinion recognizes, there are three elements to the plain view exception to the warrant requirement:

    a.  it must be immediately apparent that the items are evidence of a crime,

    b.  the officer must have a prior justification for his presence and a lawful right to be there and,

    c.  the discovery of the evidence must be inadvertent.

*Tucker v. State*, 620 P.2d 1314 (Okl.Cr. 1980). The majority opinion misstates the second requirement as requiring prior justification for being in the place where the items were seen. The opinion then concludes that the evidence inside the house was admissible under the plain view doctrine because the observation of one piece of evidence was viewed from the outside of the house, a place where the officer legally had a right to be. The United States Supreme Court explained that "[t]he plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983).

In *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) the United States Supreme Court addressed in depth, the basis and the scope of the plain view doctrine. The Court recognized the well-settled rule that objects such as weapons or contraband found in a public place may be seized by the police without a warrant. *Id.* at 739, 103 S.Ct. at 1541. However, a different situation is presented when the property is "situated on private premises to which access is not otherwise available for the seizing officer." *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). The Court concludes in *Brown* that the plain view exception therefore is not "an independent exception to the Warrant Clause, but simply ... an extension of whatever the prior justification for an officer's 'access to an object' may be." *Brown*, 460 U.S. at 739 to 740, 103 S.Ct. at 1541 to 1542.

Applying these principles to the instant case we find the arrest of the appellant was made outside of his home; at that time, he became subject to the actual control of the officers and he subjectively knew he was not free to leave. *Devooght*, 722 P.2d at 708. From that moment on, the officers needed some prior justification to enter the appellant's home and to seize the evidence viewed from outside including the cow's head. The officers must have had either a search warrant or an exigent circumstance which would allow them to enter the house and search without a warrant. *Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980); *see also Teeman v. State*, 664 P.2d 1071 (Okl.Cr.1983).

One of the exceptions to the warrant rule is that a search may be conducted where exigent circumstances or a state of emergency exists. *Fisher v. State*, 668 P.2d 1152, 1156 (Okl.Cr.1983). "The relevant test in that situation is not whether it is reasonable to obtain a warrant, but whether the search was reasonable." *Id.* at 1156. Two situations which may amount to an exigent circumstance are where the officers must conduct a protective sweep to prevent immediate danger and where there

is an immediate possibility that evidence will be destroyed. "[T]he suspicion of danger must be clear and reasonable in light of all surrounding circumstances. Officers of the law are not given free reign to conduct sweep searches on the pretense that a dangerous situation might be imminent." *United States v. Tabor*, 722 F.2d 596 (10th Cir.1983). "A protective sweep is not a thorough search. It is merely a quick and cursory viewing to check for other persons who might present a security risk." *United States v. Owens*, 782 F.2d 146, 151 (10th Cir.1986). The testimony in this case reveals that the search included looking between mattresses, in the deep freeze and even in a tool box; it is apparent the scope of a protective sweep was greatly exceeded by the officers in this case if it was ever legitimate at the inception. No one was found in the search.

The contraband removal or destruction exception is grounded in necessity. The nature of the specific situation must be such that it is not feasible for law officers to take the time required to secure a search warrant. *Blackburn v. State*, 575 P.2d 638 (Okl.Cr.1978). The State has the burden of showing that the circumstances of the situation fell within one of the specific exceptions of the warrant requirement. *Id.*, at 642. In *Blackburn*, the Court held that no exigent circumstances existed which would permit the warrantless search, where the property was not in the "process of destruction nor likely to be destroyed." *Id.*, at 643.

An analysis of the facts and the law has led me to conclude that no exigent circumstances existed at the time of the search of appellant's home. Items discovered in this search included a cow's head, four quarters of beef, and a stockyard delivery receipt. As a consequence of this unlawful search and seizure, all evidence obtained from inside the appellant's house and garage was inadmissible at trial, and it was error for the trial court to have admitted the same.

Having found that this evidence should have been suppressed, our last inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985). Our examination of the facts reveals that the State presented sufficient evidence in support of the jury's verdict and the admission of this evidence was merely cumulative and did not prejudice the jury on the issue of guilt or in setting punishment.

PARKS, Judge, specially concurring:

Again, I must express my disagreement with this Court's position regarding a defendant's admission of prior convictions. As I stated in my separate opinion in *Hanson v. State*, 716 P.2d 688, 690 (Okla.Crim. App.1986), the decision of whether to find the appellant guilty of former convictions is within the province of the jury. However, I am compelled to concur in the result reached as a matter of stare decisis. *Id.* at 690.

Appellant also urges that he was entitled to credit for the time he served prior to trial. Clearly, the better practice is to credit appellant's sentence with the time served prior to trial, although the trial judge is not required to do so. *See Hammons v. State*, 719 P.2d 463, 465 (Okla.Crim.App.1986).