## PASCHALL v. STATE.

No. A-11667. Dec. 17, 1952.

(252 P. 2d 175.)

Jerome Sullivan, Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., Robert J. Nichols, County Atty., Stephens County, Duncan, for defendant in error.

JONES, J. The defendant, Fred Paschall, was charged by an information filed in the district court of Stephens county with the crime of burglary in the second degree; was tried, convicted, and pursuant to the verdict of the jury, was sentenced to serve two years imprisonment in the penitentiary, and has appealed. We shall consider the assignments of error in the order in which they are presented in the brief of defendant.

It is first contended that the evidence was insufficient to sustain the conviction in that there was no competent evidence corroborating the testimony of the accomplice.

We shall briefly summarize the evidence: Louis Tate and Johnnie Bantau, policemen of the city of Duncan, each testified that while engaged in patrolling the streets of the city sometime after midnight and in the early morning of January 23, 1951, they noticed an empty car parked near the Rock Tavern with the motor running; that the officers commenced an investigation at the tavern and noticed a torn screen at the back door; the back door was unlocked; they attempted to open it but found that some one was holding it from the inside; that they commanded the parties on the inside to come out but got no response; finally a woman known as Helen Mae Jones or Gibson emerged, but the men on the inside of the building refused to come out; that the officers entered the building and found the defendant, Paschall, near the end of the bar and Orvil Chisum was hiding behind the bar. Several packages of cigarettes were scattered on the floor. A juke box had been pulled away from the wall and one end of a hasp which was on the back of the machine was pulled loose. Both the defendant, Paschall, and the codefendant Chisum had canvas gloves. The outside door had

a padlock, but the hasp which held the padlock had been pried off to where the parties could enter the place; that a crowbar also was found inside the building.

Mable Stevens testified that she was in charge of the Rock Tavern on January 23, 1951, and was the person who closed the tavern immediately prior to the time that it was broken into; that she distinctly remembered placing the padlock on the west door and trying it to see if it was locked: that when she left the building the juke box was sitting against the wall and the cigarettes were behind the bar; that as manager of the tavern she did not give anybody permission to enter the building after it had been closed for the night.

Grady Gossett testified that he was the owner of the Rock Tavern on January 23, 1951, and that he gave no one permission to enter the establishment after it was closed for the night; that Mable Stevens was the manager in charge of the place the night it was entered; that the building had been left open on two or three previous occasions and had been broken into about six months prior to this breaking, but this was the first time he had ever seen the lock torn off; that the building had never been left open since Mrs. Stevens had been employed to operate the place.

Helen Mae Jones, sometimes known as Helen Gibson, testified that she lived in Marlow and had known the defendant Paschall and Orvil Chisum for about a year; that she went to Duncan with Chisum on the afternoon of January 22, 1951 and met the defendant, Paschall, at a beer joint; that about midnight they took Gene Goza to Marlow; that when they returned to Duncan they discussed breaking into the Rock Tavern; that Paschall suggested that they break into the building; that they went to Paschall's house and got two pairs of gloves and a crowbar; that Paschall said he was getting the gloves so that they would leave no fingerprints; that they went to the tavern in Chisum's car and she remained in the automobile and the engine was left running while Paschall and Chisum opened the west door to the building with the crowbar; that while she was sitting in the car she noticed the police car pass so she decided to go in the building and tell Chisum and Paschall what had happened; that while she was in the building the policemen came to the tavern and called for them to come out; that she finally went out to the officers but Paschall and Chisum refused to leave the building; that she pleaded guilty to the crime and is now serving a term in the State Penitentiary; that she had previously been convicted of burglary in Cotton county and served three years in the penitentiary, and had served a term upon conviction for assault of six months' imprisonment from Marietta.

This was all of the evidence for the state. The only witness who testified on behalf of the defense was the codefendant, Orvil Chisum, with the exception that counsel for the accused testified in regard to an alleged conversation had with the witness Mable Stevens to rebut certain testimony given by her in regards to statements which she allegedly made to said counsel.

Orvil Chisum testified that he worked in the oilfield pulling casing east of Comanche; that he was in the city of Duncan to have a company pickup truck repaired and met Fred Paschall in Floyd Cheeves place of business where they drank a bottle of beer; that Mae Jones sat down at the table with them and drank a beer and stated she wanted some whiskey and told them they could get it cheaper at Marlow; that they drove to Marlow and Paschall bought one pint and Mae Jones bought a pint of whiskey; that when they returned to Duncan they drove out to Herman's Drive-In on East Main street where they remained for about an hour. Mae Jones was intoxicated and so was Paschall; that he stated that he had to return home so that he could get up early and go to work next morning; that Mae Jones wanted to go to the Rock Tavern; that he drove to the tavern but found it was closed; that as he started around the building Mae Jones,

who was sitting in the middle of the car, placed her foot on the brake and killed the motor; that she got out of the automobile and went toward the building which was about 50 yards away; that she hadn't returned in a few minutes so he and Paschall decided to go see about her as she was drunk; that they went to the building and could not see her and hollered for her and that she answered from inside the building stating, "Come on in"; that he and Paschall entered and told her to get out of there, "that she had no business in there", and as they were talking to her they heard the officers on the outside of the building; that Mae Jones ran to the door and held it but defendant told her to open the door and they all walked out; that he had no intention of breaking into the building and did not break into it and that there had been no discussion about breaking into the building between him and Paschall and the woman; that he had the type of white canvas gloves used by oilfield workers in his pocket; that he used them constantly in connection with his oilfield work and did not have the gloves to wear in the building to prevent leaving any fingerprints.

There is not only competent evidence of the guilt of the accused but the evidence as to his guilt is conclusive. The proof of the state showed that the lock on the building was broken and the building was entered without permission of the owner or manager. The interior of the building showed that the persons who entered the building had the evident intention of stealing cigarettes and money from the juke box; they were surprised by the officers while they were in the building. If the witness Mae Jones had not testified there would have been conclusive proof of the defendant's guilt. The defendant was indeed fortunate that he was given the bare minimum sentence.

It is next contended that the trial court erred in permitting the state to endorse the name of Helen Mae Gibson on the information after two jurors had been excused by both the state and defendant on the voir dire examination.

The record discloses that during the selection of the jury and after two jurors had been excused upon challenges by the state and defendant that the county attorney asked permission to endorse the name of Helen Mae Jones as a witness. The counsel for defendant objected but his objection was overruled. Her name was permitted to be endorsed on the information and she later testified as hereinabove shown. At the time the court permitted the county attorney to endorse the name of the witness he granted counsel the privilege of inquiring of the jurors with reference to the witness who had just been endorsed and further took a 20 minute recess to permit counsel to talk to the witness. Counsel for the accused concede that it is established law that the trial court in the exercise of discretion may permit the endorsement of additional witnesses on the information even after the trial has begun, but it is contended that the court abused its discretion in this instance.

The record discloses that in the complaint filed before the committing magistrate Helen Mae Jones was named as a co-defendant with Paschall and Chisum; however, she entered her plea of guilty to the charge and her name did not appear on the information when it was filed in the district court. On May 17, 1951, the district judge entered an order directing that Helen Mae Jones be returned from the State Penitentiary to testify as a witness at the trial of the accused which was set on May 21st. The sheriff made his return showing that he executed the order on May 17, 1951, by returning Helen Mae Jones from the penitentiary to the county jail at Duncan on May 17th and filed his return in the clerk's office on May 18, 1951. In Vardeman v. State, 54 Okla. Cr. 329, 20 P. 2d 194, 195, this court held:

"Every defendant jointly indicted or informed against is charged, under the statute (St. 1931, § 3066), with notice that the state may, if it so desires, use a

codefendant as a witness against him. The appearance of the name of the witness on the face of the information or indictment as codefendant answers every requirement of the statute (St. 1931, § 2829) that the name of the witness be indorsed on the information or indictment before trial."

Counsel was evidently not surprised when this woman appeared as a witness. He did not claim surprise when the court permitted the county attorney to endorse the name of the witness upon the information, nor did he ask for a continuance of the trial in order to enable him to meet the testimony of such witness. He merely saved his exception to the action of the court in permitting her name to be endorsed on the information. Even after counsel was given permission to talk to the witness he did not ask that his trial be postponed or that he be given any additional time to prepare his defense to meet any unexpected development injected into the case because of this witness. In the case of Shaw v. State, 53 Okla. Cr. 389, 12 P. 2d 550, this court held:

"If, after announcing ready for trial, defendant's counsel first learns of the indorsement of the names of additional witnesses on an information, if the defendant is surprised thereat, and such indorsement of additional witnesses requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance in which he should set out the facts constituting such surprise, and what evidence, if any, he could produce to rebut the testimony of such additional witnesses if the case were postponed or continued. Where he fails to do this, the error, if any, is waived."

The judgment and sentence of the district court of Stephens county is affirmed.

BRETT, P. J., and POWELL, J., concur.