William Roy EVANS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12433.

Criminal Court of Appeals of Oklahoma.

June 12, 1957.

John W. Tillman, Fred A. Tillman, Don Hampton, Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

This is an appeal from the county court of Washington County, where defendant was convicted on a charge of driving a motor vehicle while under the influence of intoxicating liquor, and sentenced to ten days confinement in the county jail, and to pay a fine of $50 and costs.

For reversal it is first argued that the verdict and judgment are contrary to the evidence.

Gerald E. Stapleton testified that he worked for the Phillips Petroleum Com-

pany as an I.B.M. operator, and had been in their employment for nine years. He said that on June 6, 1955 at about 10:30 P.M. he was at a neighbor's home and outside of the door facing the northeast side of the intersection of First Street and Wyandotte in Bartlesville, "when this car came at an excessive rate of speed, and there at First Street and Wyandotte there is an 'S' curve; there was also another car which came to a stop, * * * and the car that struck it, stopped and backed up." Witness identified the defendant as being the man who was driving the speeding car. He said that his wife called the police and he went to see if anyone was hurt. He said that he was within four or five feet of the defendant, and could smell whiskey on him. It was his opinion that defendant was intoxicated.

Clarence Gray testified that at the time of the collision in question he was employed as a police officer for the city of Bartlesville, and was called to the scene. Said he: "It was between 10:30 and 11 P.M. when we arrived on the scene, shortly before the other squad car came, we found there had been an accident and we found Mr. Evans was very intoxicated. We placed him under arrest." He said that defendant told him he had been driving the car involved in the accident.

Lewis M. Brown, Bartlesville policeman, testified that he went to the scene of the accident and found defendant there and that in his opinion he was intoxicated. He said that he and another officer took defendant to the police station. He said that defendant was then given an intoximeter test.

Paul Alexander, policeman, testified that he was at the station when defendant was brought in; that he was across the desk from defendant, about 15 feet from him; that he had seen many drunk people in his line of work, and that in his opinion defendant was intoxicated at the time in question.

P. L. Wood, chemist, department of Public Safety, qualified as an expert witness. He identified the Forrester intoximeter kit that he said he prepared and that was used to make the intoximeter test in question. He said that he got the unit from the factory February 12, 1955. Said he:

"I made a check of it to see that it was complete, and I filled out the information and entered it and then I sealed it and sent it to the County Attorney here.

"Q. When did you next see this instrument? A. On June 10th, 1955.

"Q. How was it sent to you? A. By mail.

"Q. What, if anything, did you do with it then? A. It was taken to the laboratory for analysis at a later date.

"Q. What were the results this showed? A. It showed .16 per cent.

"Q. Are you acquainted with the effect of alcohol in the blood? A. Yes.

"Q. In your opinion the study you have made, what would be the effect of .16 per cent? A. I would say the subject would be under the influence of intoxicating liquor.

"Q. Are there a number of organizations that have accepted the intoximeter? A. Yes.

"Q. What are some of them? A. National Safety Council, American Medical Association, and American Bar Association.

"Q. What have you to say about the amount of alcohol in the blood in various quantities and what effect it would have? A. There are three groups, from .00 to .05 indicates that there is not sufficient alcohol in the blood stream to influence your reactions appreciably. The group .05 to .15 is determined questionable. From .15 to above anyone regardless is under the influence of alcohol.

"Q. What was the results of this test? A. It was .16 per cent."

The defendant testified and said that he was 33 years of age, and had never been arrested before. He said that on the night in question he had been to Marie's Supper Club where he ate and had two highballs of Bourbon whiskey. He denied that he was intoxicated. He said he had a collision with another car at First and Wyandotte in Bartlesville; that his left fender struck the left fender of the other car.

Leon Childers, age 24, testified that he was riding in the car with defendant at the time of the accident; that he had met Mr. Evans at the supper club between 9 and 10 o'clock the evening of June 6, 1955; that he worked for Mr. Evans. He said: "I did not notice anything wrong with his driving."

Five character witnesses testified that defendant's general reputation as being a peaceable and law-abiding citizen was good.

Jack Wayne Eyestone testified for the defendant, and said that defendant ran into his car about 10 o'clock the night of June 6, 1955 and clipped his left fender; that defendant paid him $15 for the damage to his car. He said that he would not say that defendant was intoxicated. He did not observe anything unusual about him when he came up to his car.

■ The jury pondered the question as to whether defendant was intoxicated, under a proper instruction of the court, reading:

"You are instructed that if intoxicating liquor has so far affected the nervous system, brain or muscle of the driver of an automobile as to impair, to any appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is under the influence of intoxicating liquor within the meaning of the statute."

■ This court has said in many cases that it will not reverse a case for insufficiency of the evidence if there is any substantive evidence on which the jury could reasonably base its verdict of guilty. Ryan v. State, 97 Okl.Cr. 119, 258 P.2d 1208. And from the evidence recited, it has been demonstrated that there was evidence supporting the verdict and judgment complained of in this case. We find it sufficient.

It is next urged that the name of State's witnesses Gerald E. Stapleton and Lewis M. Brown were not endorsed on the copy of the information furnished defendant, and that he did not know that they would testify until time of trial. Defendant objected to these witnesses testifying, but his objections were by the court overruled.

■ The casemade shows that the information was filed June 7, 1955 and the names of both the witnesses in question appear on the information. The objection to the witnesses go only to the fact that though the names appear on the original information, that they do not appear on the copy so that defendant had no notice. From the record we do not discover error, for we note, as already indicated, that the only controverted question of fact involved was whether defendant was under the influence of intoxicating liquor in such degree that he was not in full possession of his faculties, and that his nervous system by reason of such intoxication was affected to the extent that he was unable to operate his automobile in a careful and prudent manner. It was not necessary that defendant be down drunk. The evidence of the witnesses was cumulative on the point, as has been seen. Under such facts it could not constitute reversible error for such witnesses to testify. Whitworth v. State, 32 Okl.Cr. 200, 239 P. 930.

■ This court has specified a definite procedure to follow where a trial court permits the names of witnesses to be en-

dorsed on an information after trial has begun, or where the names have been added without notice to the accused. We said in Paschall v. State, 96 Okl.Cr. 198, 252 P.2d 175:

"If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. Where he fails to do this the error, if any, is waived."

By reason of the foregoing, the case is affirmed.

BRETT, P. J., and NIX, J., concur.