Derrell Lynn THOMAS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–87–802.

Court of Criminal Appeals of Oklahoma.

May 10, 1991.

As Corrected May 29, 1991.

Rehearing Denied June 21, 1991.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., William H. Luker, Wellon B. Poe, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Appellant, Derrell Lynn Thomas, was convicted of First Degree Murder (21 O.S. Supp.1982, § 701.7A) and of Robbery By Force (21 O.S.1981, § 791) after a trial by jury in the District Court of Creek County, Case No. CRF–87–94. The jury recommended the death penalty for the murder charge and a term of ten (10) years on the robbery charge. Appellant was sentenced accordingly. He now appeals from that judgment and sentence.

Janie Powell met Appellant on April 27, 1987, at the Sapulpa V.F.W. Mrs. Powell sat at the bar for a short time with Appellant and another man, Kenneth Worrell. Powell told the men that she was in the process of building a house. Appellant asked her if the property had been treated for termites and suggested that she hire him to perform those services.

After agreeing to accept Appellant's offer of services, Mrs. Powell attempted to give Appellant directions to her house and tried to draw a map. Eventually, she asked Appellant simply to follow her to the house. They left the bar and Appellant followed Mrs. Powell to the house in his own car. Mrs. Powell was found dead in her home the next day. Her jewelry and several hundred dollars which she had received from her husband the previous day were missing.

The day after he went to Powell's house, Appellant went to the Mustang Lounge in Tulsa. He sold several pieces of Mrs. Powell's jewelry to the owner of the bar. He also showed the bar owner's daughter several one hundred dollar bills which he had in his wallet.

During the investigation of the crime, police spoke to Mrs. Powell's father-in-law, who lived in a mobile home next to Mrs. Powell's house. He reported that he saw a brown car with no hubcaps parked in Powell's driveway the evening before. Police made a video tape of the driveway, recording the distinctive patterns on the tire tracks left in the dirt.

Appellant was apprehended at the Coppa Motel in Durant, Oklahoma. After he executed a consent to search form, police searched his room and seized his car. The car matched the description given by Powell's father-in-law and the patterns in the tire tread matched the tracks found at the scene of the crime.

At trial, the medical examiner testified that Mrs. Powell died as a result of a severe beating which included manual strangulation. She was also stabbed four times. Two of the stab wounds were received post-mortem; however, the other injuries occurred prior to Mrs. Powell's death.

## I

As his first assignment of error, Appellant claims that the trial court committed reversible error by allowing the State to endorse additional witnesses immediately prior to the commencement of his trial. Specifically, Appellant claims that it was error for the court to allow the addition as witnesses of Appellant's daughter, Regina Thomas, and of Mary Wofford, Appellant's sister-in-law. Although the State requested the endorsement more than forty-eight hours prior to trial, Appellant did not receive notice of the addition until the Saturday prior to the Monday trial. He also claims that the addresses given for the witnesses were incomplete and that Wofford was erroneously referred to as Mary Thomas.[1]

In addition to the endorsement of the two women, on the day of trial, the State requested permission to add Mrs. Powell's husband as a witness, claiming that his exclusion was an oversight which had just been discovered.

1. The State filed its request to endorse these two women as witnesses on September 17, 1987. The appellant received notice of the endorse-ment on September 19, 1987 and the trial started on September 21.

The Oklahoma Constitution provides that a criminal defendant in a capital case, must be "furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their post office addresses" at least two days prior to the commencement of the trial. Okla. Const. Art. 2, § 20. This Court has previously explained the procedure by which a defendant may challenge the late endorsement of a witness. In *Diaz v. State*, 728 P.2d 503, 513 (Okl.Cr.1986), we held that a defendant must do more than simply object to the addition of more witnesses on the eve of trial; he must withdraw his announcement that he is ready for trial and request an immediate continuance. *See also Fisher v. State*, 668 P.2d 1152 (Okl.Cr.1983); *Blanton v. City of Oklahoma City*, 568 P.2d 288, 290 (Okl.Cr.1977); *Mason v. State*, 560 P.2d 1048 (Okl.Cr.1977). In *Diaz*, we quoted the rule established in *Paschall v. State*, 96 Okl.Cr. 198, 252 P.2d 175 (1952):

> The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information after the trial has commenced. If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for postponement or a continuance in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. *Where he fails to do this the error, if any, is waived.* (Emphasis added.)

*Id.* at 513.

■ In the present case, Appellant first raised his objection to the endorsement of the three witnesses immediately prior to the selection of the jury. During the hearing, which took place in the judge's chamber, Appellant's counsel stated "In this particular case, I'm not asking for a continuance in the case, but I would ask the Court to prohibit the use of testimony of three late endorsements of witnesses." Transcript, p. 22.[2] The trial court specifically asked:

> Mr. Miller, do you think you need a continuance for purposes of investigation of any of these three witnesses? I understand your argument but it would appear to me that if you perhaps needed a short continuance I might grant you that for 48 hours, but I do not believe it would be appropriate for me to disallow the State from having the right to call these witnesses if they should so desire.

Tr. 27.

Appellant again declined to accept the court's offer, notwithstanding the fact that he did not believe that his client understood the nature of at least one witness' testimony:

> I have discussed, not the specifics of what Mr. McClain says the testimony of Kenneth Powell will be, but—so he doesn't know that somebody is going to come in here and testify about hundred dollar bills that were in the possession of the deceased—I would—I think that I should talk to him first about that. He has made it clear to me that he wants to go ahead with this trial today—

Tr. 27.

After this statement by counsel, the court overruled the motion, but then offered and took a "short recess" to give counsel time to meet with Appellant. After the recess, the proceedings moved into the courtroom without further discussion of the objection. Under these circumstances, we find that any error, assuming that such error existed, was waived.

■ In his brief, Appellant discusses the testimony of the three witnesses at length and presents the Court with the argument that he was prejudiced by the endorsement

2. Hereinafter cited as Tr. followed by the appropriate page number.

merely because the testimony of the witnesses was harmful to his view of the case. Quite simply, this is not the standard which we will apply in such a situation. We will find error when a defendant's right against unfair surprise has been violated, resulting in prejudice to his ability to prepare for his defense. Simply because the witnesses will provide detrimental evidence against the defendant does not warrant their exclusion. We will not exclude relevant, however damaging, testimony when the defendant is given the opportunity to protect his ability to prepare in such a situation through the grant of a continuance. We find that the trial court followed the correct procedure when it offered Appellant a continuance. *Rhodes v. State*, 695 P.2d 861, 863 (Okl.Cr.1985). His refusal of the offered continuance has waived any error.

## II

We next turn to Appellant's allegation that a statement made by Mary Wofford was inadmissible hearsay so prejudicial, his conviction should be reversed. At issue, is the following testimony:

Q. (By Mr. McClain) In this conversation did—Well, let me ask you: What time, about, did Regina Thomas call you that Tuesday evening?

A. Oh, it was probably between 8:00 and 10:00.

Q. Did she tell you anything in that conversation that you recall?

A. Well, she just told me that—

MR. MILLER: I've got to object to the hearsay, Judge.

THE WITNESS:—that Derrell killed—

MR. MCCLAIN: Don't—Don't answer yet.

THE COURT: Wait a minute Ms. Wofford. I'm going to sustain the objection.

(Tr. 486).

▪ The State alleges that the error presented by the introduction of the hearsay statement by the witness is waived because Appellant did not request the court to admonish the jury or to grant a mistrial. We held in *Kelsey v. State*, 744 P.2d 190 (Okl.Cr.1987) that we would no longer deem an error to be waived if such error was properly preserved by contemporaneous objection, notwithstanding the fact that the objection was not accompanied by a request that the jury be admonished and that a mistrial be granted. Accordingly, we cannot accept the State's simplistic resolution to the problem presented here. Neither party, however, provides any insight into the proper determination whether reversible error may result when an objection to inadmissible evidence is sustained but the witness continues to answer.[3]

▪ In *Shepard v. State*, 756 P.2d 597 (Okl.Cr.1988), we refused to reverse a conviction on the ground that the prosecutor made improper comments, unfairly prejudicing the defendant. In that case, we held that there was no authority requiring reversal in a situation where the objection by the defendant was sustained. The same is true here. The objection was sustained and no further relief was requested.

We have long held that when inadmissible evidence or an improper comment is presented to a jury, an admonishment to the jury by the court that the evidence or comment is not to be considered will cure any error. *Patterson v. State*, 735 P.2d 338 (Okl.Cr.1987); *Funkhouser v. State*, 734 P.2d 815 (Okl.Cr.1987), *cert. denied* 484 U.S. 942, 108 S.Ct. 326, 98 L.Ed.2d 354; *Kitchens v. State*, 513 P.2d 1300 (Okl.Cr. 1973). Such an admonishment in the present case would have been appropriate, but none was requested. Appellant now requests us to reverse his conviction regardless of the fact that the error could

---

**3.** We assume for purposes of this opinion that there is no collusion between the witness and the prosecutor to introduce the evidence regardless of the trial court's ruling against admissibility. Should there be any evidence of such a scheme, reversal of the conviction for a new trial would be the only possible resolution. In addition, however, we expect that there would be swift justice through disciplinary means against any attorney participating in a plan to so violate the right of a defendant to a fair trial.

have been cured at trial. We are loath to reach such a result which could have been easily avoided. As evidenced by the trial court's ruling, the statement by Wofford was error. Based on the foregoing discussion, we find that the error does not require reversal for several reasons. First, as we stated in *Shepard,* when the trial court sustained the objection, the desired result was obtained. Second, Appellant's failure to request admonition of the jury after the witness ignored requests to stop is in the nature of invited error. Although a defendant is no longer required to request admonition of the jury in order to preserve a possible error for review on appeal, he should still request that the jury be instructed to disregard any improper testimony. There is no better way to assure that the improper statement is not considered by the jury.

■ Finally, we hold that the statement, while constituting error, is harmless error. Evidence of Appellant's guilt was great. "We find that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony complained of been excluded." *Thomsen v. State,* 582 P.2d 829, 832 (Okl. Cr.1978). For the above stated reasons, we do not find the need to reverse or modify Appellant's conviction or sentence on this ground.

### III

Appellant has identified several instances of conduct by the prosecutor where, through either questioning or argument, subjects were raised which created so much prejudice against him that the jury's verdict must be reversed. The first improper situation alleged by Appellant concerns testimony involving a tattoo on Appellant's left arm. The tattoo portrays the head of a woman with a dagger stuck through her mouth and coming out on the other side of her head. The name Delores is underneath.

The State asserts that this evidence was relevant testimony designed to link the testimony of Kenneth Worrell, who could not identify the man with which he spoke on the evening Ms. Powell was killed, with Appellant. Worrell did remember that the man had a tattoo of a dagger on his arm, thus, the evidence of Appellant's tattoo was relevant to prove that Appellant was the man at the V.F.W. club that evening. Appellant claims that the evidence was introduced merely to embarrass him or as an attack on his character.

Our evidence code defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S. 1981, § 2401. "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." 12 O.S.1981, § 2403. Therefore, it is incumbent upon us to determine first, whether the evidence is relevant, and second, whether the prejudicial effect substantially outweighs the probative value of the evidence.

■ We find that in light of the witness' inability to identify Appellant as the man he sat next to at the bar, the testimony concerning the tattoo must be considered relevant evidence. After balancing this relevance against the potential prejudicial effect, we are unable to reach the conclusion that the effect of introducing evidence of the tattoo was any more harmful to Appellant's interests than any other evidence against him. The nature of the tattoo alone does not outweigh proof of its existence as probative evidence.

■ The next instances of alleged misconduct involve several statements made by the prosecutor during his closing argument. The first concerns Appellant's ability to subpoena and question witnesses. We have reviewed the comments and find them to be fair statements under the situa-

tion at hand. While we have condemned comments regarding the conclusions which may be drawn from a defendant's failure to call particular witnesses, we have not found error when the remarks were merely directed at pointing out that a defendant had access to other witnesses if he so desired. *White v. State*, 726 P.2d 905 (Okl. Cr.1986), *cert. denied* 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239. There is no error presented here.

■ The next instance of misconduct identified by Appellant involves argument by the prosecutor during his second closing alleging that Appellant had told "untruths" and that Appellant's counsel was attempting to "sell everything including the blue sky." Appellant objected to both statements and the trial court sustained the objection to the characterization of defense counsel's closing. We find that this cured any error in this regard. *Shepard v. State*, 756 P.2d at 600. Such comment, when based on the evidence is not grossly improper and does not require reversal. *Dangerfield v. State*, 742 P.2d 573, 574 (Okl.Cr.1987).

## IV

■ Appellant's next claim of error concerns the sufficiency of the *Miranda* warnings which were given to him before he executed the consent to search form and before he participated in a video-taped interrogation. He alleges that the warnings, given on two different occasions, were constitutionally inadequate because they did not specifically advise that the right to counsel allowed the appointment of an attorney prior to the beginning of questioning. We have searched the record before us and do not find any instance at trial where Appellant voiced any objection to the introduction of evidence or the taped statement on the basis of inadequate *Miranda* warnings. Failure to make such an objection at a time when any damage by admission of improper evidence may be avoided waives any claim of error. *Thompson v.*

*State*, 724 P.2d 780, 785 (Okl.Cr.1986), reversed other grounds 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988); *Reynolds v. State*, 575 P.2d 628, 635 (Okl.Cr. 1978).

■ Notwithstanding Appellant's waiver of this issue, we are unable to find any merit in his complaint. The record discloses that Appellant was advised of his rights no fewer than four times. Inquiry was made with only one witness concerning the substance of the warnings given. Creek County Sheriff, Bob Joe Whitworth informed Appellant of his rights under the *Miranda* decision prior to presenting Appellant with the consent to search form and before the video taped statement.

Appellant seeks to convince us that he was prevented from inquiring on cross-examination into the substance of the warning given by Sheriff Whitworth; however, we do not find that to have been the case. Appellant asked the Sheriff to repeat the warning which was given. The prosecutor's objection to that question was sustained on the basis that the question had been asked and answered previously. Counsel for Appellant did not ask any further questions concerning the adequacy of the warnings or the voluntariness of the consent to search. Any omission was made by counsel and was not due to the ruling of the court.

In *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), the Supreme Court noted:

Other courts considering this precise question presented by this case—whether a criminal defendant was adequately informed of his right to the presence of appointed counsel prior to and during interrogation—have not required a verbatim recital of the words of the *Miranda* opinion but rather have examined the warnings given to determine if the reference to the right to appointed counsel was linked with some future point in time after the police interrogation.

*Id.* at 360, 101 S.Ct. at 2810.

We find that the substance of the rights outlined in *Miranda v. Arizona*, 384 U.S.

436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were adequately covered by the warnings given by Sheriff Whitworth. Neither warning indicated in any way that the right to counsel was applicable only after questioning was begun. There has been no error presented here which would require action from this Court.

## V

■ Appellant challenges the admission into evidence of two color photographs showing the dead body of Janie Powell as it was found by police. He contends that these pictures were so "gruesome" that the probative value was outweighed by the prejudicial effect. We disagree. We have long held that the admission of pictures of a deceased were relevant to establish the *corpus delicti*[4], to illustrate the injuries sustained by the victim[5], to corroborate expert testimony[6], and to establish intent.[7] We find that the pictures admitted in the present case are relevant for all of the above listed reasons. The pictures admitted[8] were as gruesome as any pictures of a murder victim; however, they were not so repulsive as to be inadmissible.

## VI

As his first assignment of error with regard to the second stage of his trial, the punishment phase, Appellant asserts that the verdict forms submitted to the jury were improper and could have forced the return of a death sentence regardless of a desire by the jury to ignore the existence of the statutory aggravating circumstance

and recommend a life sentence. This argument is based on the fact that only two verdict forms were provided. One stated:

> We, the jury, empaneled and sworn in the above-entitled cause, do upon our oath, unanimously find that the defendant should be sentenced to a term of life imprisonment.

O.R. 168.

The other verdict form, which was ultimately signed and delivered by the jury, read:

> We, the jury, empaneled and sworn in the above-entitled cause, do upon our oaths, unanimously find that the defendant committed the murder in this case in an especially heinous, atrocious or cruel circumstance and therefore impose the death penalty.

O.R. 169.

Appellant alleges that this verdict form could have lead the jury to believe that they had no option other than returning a death sentence if they found the existence of the aggravating circumstance. He complains that the absence of a verdict form which set out the jury's ability to ignore the finding of the aggravating circumstance and impose a life sentence could have resulted in an unconstitutional "directed verdict of death."

To evaluate the merits of this claim, we look to the recent Supreme Court case of *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). In that case, the Court was concerned with establishing a uniform standard of review applicable in capital cases where the appellant

---

**4.** *Fox v. State*, 779 P.2d 562, 570 (Okl.Cr.1989); *Dumire v. State*, 758 P.2d 829 (Okl.Cr.1988).

**5.** *Berry v. State*, 753 P.2d 926 (Okl.Cr.1988); *Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983), *cert. granted* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), opinion on rehearing 700 P.2d 223 (Okl.Cr.1985), *cert. denied* 474 U.S. 865, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985).

**6.** *Castro v. State*, 745 P.2d 394, 402 (Okl.Cr. 1987), on reh. 749 P.2d 1146 (Okl.Cr.1987), *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d

446; *DeVooght v. State*, 722 P.2d 705, 713 (Okl. Cr.1986); *Robinson v. State*, 677 P.2d 1080, 1087 (Okl.Cr.1984).

**7.** *Smith v. State*, 737 P.2d 1206, 1210 (Okl.Cr. 1987), *cert. denied* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383.

**8.** The trial court held one of the three pictures sought to be introduced was cumulative and denied its admission.

alleges that instructions to the jury are subject to numerous interpretations, one (or more) of which would result in a constitutionally infirm verdict. The Court noted that in the past, it had not been particularly precise in either expressing or utilizing a consistent standard of review. To rectify that deficiency in the law, the Court announced the following guidelines:

> The claim is that the instruction is ambiguous and therefore subject to an erroneous interpretation. We think the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence. Although a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction, a capital sentencing proceeding is not inconsistent with the Eighth Amendment if there is only a possibility of such inhibition.

*Id.* 110 U.S. at 1198.

The opinion by the Court continues by explaining the rationality for such a rule:

> This "reasonable likelihood" standard, we think, better accommodates the concerns of finality and accuracy than does a standard which makes the inquiry dependent on how a single hypothetical "reasonable" juror could or might have interpreted the instruction. There is, of course, a strong policy in favor of accurate determination of the appropriate sentence in a capital case, but there is an equally strong policy against retrial years after the first trial where the claimed error amounts to no more than speculation. Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instruction may be thrashed out in the deliberative process, with common sense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.*

The Court compared this standard of review to that applied to other constitutional issues and found it to require a demonstration of probability that but for the error, the result at trial would have been different. This is the same burden of proof required of litigants claiming to have been prejudiced by ineffective assistance of counsel, the deportation of defense witnesses or the prosecution's failure to disclose exculpatory evidence. Defendants seeking a new trial based on newly discovered evidence must also meet this same test.

■ Although this Court has not yet used the test established above, it blends well with the test currently applied, that being whether the instructions, when taken as a whole, properly advise the jury of the applicable law. *Ashinsky v. State,* 780 P.2d 201 (Okl.Cr.1989); *Nunley v. State,* 660 P.2d 1052 (Okl.Cr.1983); *Allison v. State,* 675 P.2d 142 (Okl.Cr.1983); *Short v. State,* 634 P.2d 755 (Okl.Cr.1981). We have consistently applied this test to challenges to jury instructions after finding that, as here, there was no objection offered at the trial court level.[9] We believe this test is applicable to the present case, notwithstanding the fact that we are dealing with a verdict form rather than an instruction, because Appellant's argument is premised on the theory that the improper nature of the verdict form could have caused the jury to ignore the other instructions concerning the way in which punishment was to be determined.

In the present case, Appellant urges us to find that reversible error occurred in the second stage of his trial when the trial court merged the form used to return the finding aggravating circumstances with the

---

9. During the conference to settle jury instructions, after some discussion of the matter, counsel for Appellant expressly stated that he had no objection to the way the trial court prepared the verdict forms.

form used to return the death sentence. Appellant cites *Moore v. Kemp,* 809 F.2d 702 (11th Cir.1987) and *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981), overruled on other grounds, *Brown v. State,* 743 P.2d 133 (Okl.Cr.1987), as support for his proposition that the verdict form was either improperly prepared or ambiguous. We do not find *Moore* or *Franks* to be applicable in this instance.

In *Moore,* the issue considered did not involve the verdict forms. The challenge was made to the instructions which were given telling the jury how to return their verdict. In *Moore:*

> The instruction told the jury that upon finding an aggravating circumstance it was "authorized" to impose a death sentence and that, absent an aggravating circumstance, it was not authorized to consider the penalty of death. The jury was then instructed that if an aggravating circumstance was found "the form of your verdict *would be* ... death." This instruction, in mandatory language, informed the jury that it was required to return a sentence of death if it found an aggravating circumstance.

*Moore,* 809 F.2d at 733. In short, the instruction mandated the death penalty if any of the aggravating circumstances were found. In the present case, the jury was instructed:

> You are instructed that an aggravating circumstance is one which increases the guilt or enormity of the offense. In determining which sentence you may impose in this case you may consider only that aggravating circumstance set forth in these instructions.

> Should you unanimously find that this aggravating circumstance existed beyond a reasonable doubt, you would be authorized to consider imposing a sentence of death.

> If you do not unanimously find beyond a reasonable doubt that this aggravating circumstance existed you are prohibited from considering the penalty of death.

In that event, the sentence must be imprisonment for life.

O.R. 159.

This instruction is significantly different from the instruction given in *Moore.* The *Moore* opinion specifically approved the language which stated the jury was "authorized" to impose a death sentence as implying the ability not to return such a sentence.

Similarly, we find that the instructions given in *Franks* were distinctly different from the situation we are considering here. Again, the problem at issue was with jury instructions and not verdict forms. In *Franks,* the jury was to consider the applicability of three different aggravating circumstances. We held that the jury was improperly instructed because:

> The aggravating circumstances appeared only on the same verdict form as the sentence of death. But the jury was instructed to check and sign any aggravating circumstances which they found, so that the finding of aggravating circumstances resulted in the signing of the death sentence verdict form. And when the jury found aggravating circumstances, the act of using the death sentence verdict form to indicate their findings may have resulted in a failure to fully consider mitigating circumstances and lead to an erroneous recommendation of the death sentence.

*Franks,* 636 P.2d at 367.

■ In the present case, the issue in *Franks* is exactly the opposite of the problems at hand. In *Franks,* the *jury instructions* could have been construed as requiring the jury to return a death verdict if they found the existence of any aggravating factors. In the present case, there is no protest that the *instructions* could lead to such a result, rather Appellant argues that the concededly unartfully drafted verdict form may have led the jury to ignore the instructions given by the court concerning the balancing of aggravating circumstances and mitigating factors and

simply return a death sentence based on the finding of the aggravating circumstances. We think the possibility that the jury ignored the bulk of the instructions and returned an improper verdict is exceedingly remote. The jury was not required by the instructions to indicate the finding of the aggravating circumstance *unless it returned a verdict of death.* While it would have been better for the trial court to have used a different form, specifying that the weighing process had been resolved in favor of death or different forms indicating the finding of the aggravating circumstance and announcing the sentence separately, under the circumstances at hand, with only one aggravating circumstance alleged, we do not find a likelihood that the jury would be any more inclined to impose death because one form was used rather than two.

We have examined the instructions as a whole and find that there is no "reasonable likelihood" that the jury, after telling them that aggravating circumstances must be balanced against the mitigating factors, could have ignored the multiple instructions concerning the balancing of the aggravating and mitigation factors before reaching its verdict and taken the verdict form to require a sentence of death. We do not find that the verdict forms in this case could have lead the jury to ignore its instruction that the finding of the aggravating circumstance merely *authorized,* rather than required, a sentence of death. There is no error presented here.

### VII

Appellant's next claim of error concerns the trial court's ruling that evidence of an offered plea bargain, which would have resulted in a life sentence, was not admissible as mitigating evidence of the prosecutor's assessment of the nature of Appellant's crime. We find the trial court's ruling was correct. This issue has been previously considered and rejected by this Court. *See Ross v. State,* 717 P.2d 117, 122 (Okl.Cr.1986), aff'd 487 U.S. 81,

108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), *reh. denied* 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962 (1988). Evidence of this nature does not lessen the culpability for the crime charged, but rather, only indicates that a prosecutor was willing to make a deal, for whatever reason, to dispose of the case. We recently held that "[a] mitigating circumstance consists of '... any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Nguyen v. State,* 769 P.2d 167, 173 (Okl.Cr.1988), *cert. denied* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 *reh. denied* 492 U.S. 938, 110 S.Ct. 27, 106 L.Ed.2d 639 (1989), citing *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1, 8 (1982). The trial court's decision not to allow this information to be presented to the jury was correct.

### VIII

Appellant's next contention concerns the instructions which were given concerning the aggravating circumstance "that the murder was especially heinous, atrocious or cruel." He alleges that the instructions as given resulted in the unconstitutionally vague interpretation which required reversal in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). We disagree. Our most recent opinions to address identical claims are *Nuckols v. State,* 805 P.2d 672 (Okl.Cr.1991) and *Foster v. State,* 779 P.2d 591 (Okl.Cr.1989). In those cases, we held that because of the difference in jury instruction given, the constitutional infirmities identified in *Maynard* were cured. *See also Fox v. State,* 779 P.2d 562, 576 (Okl.Cr.1989); *Stouffer v. State,* 742 P.2d 562 (Okl.Cr.1987), *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779. There is no need to address this issue again.

### IX

Appellant's ninth allegation concerns the sufficiency of the evidence

presented in support of the aggravating circumstance. Appellant asserts that we are controlled in our consideration by *Brown v. State*, 753 P.2d 908 (Okl.Cr.1988), a case in which we reversed the conviction because the evidence did not establish that there was torture or serious physical abuse involved in the murder of the victim because several of the victim's wounds could have been instantly fatal. We find the evidence in this case, unlike the evidence in *Brown*, supports the jury's finding that the murder was occasioned by serious physical abuse.

The evidence at trial established that Janie Powell was beaten, strangled and stabbed. Although the evidence showed that two of the four stab wounds were inflicted after death, the other injuries are sufficient to support the finding of the aggravating circumstance.

During the savage beating which the victim endured, her nasal bone and lower jaw bone were broken. Her dentures were knocked out by the blows to her face which caused severe bruising. Her eye was nearly pushed out of the socket. Her scalp was torn. As a result of the strangulation attempt, both her Adam's apple and her hyoid bone were broken. Certainly this evidence supports a finding that Powell was subjected to serious physical abuse allowing us to proceed to a determination as to whether the murder was especially heinous, atrocious or cruel.

■ Although there is no direct evidence that Powell suffered before her death, there is certainly circumstantial evidence to support such a theory. The medical examiner's testimony that two of the stab wounds were post mortem leads to the conclusion that the other injuries occurred prior to the stabbing. The injuries to Mrs. Powell resulted in a great loss of blood. It is highly improbable that Powell would have been beaten, strangled and stabbed if she was rendered immediately unconscious by the first blow. We find that the evidence supports a finding that murder was especially cruel in that the killing was pitiless and appears to have been designed to inflict a high degree of pain on the victim.

Applying the law which we developed in *Stouffer* and *Foster*, we find the forgoing to be sufficient evidence to support a finding the victim's death was "especially heinous, atrocious or cruel." *See also Moore v. State*, 736 P.2d 161 (Okl.Cr.1987), *cert. denied* 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163; *Rojem v. State*, 753 P.2d 359 (Okl.Cr.1988), *cert. denied* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238.

### X

■ Appellant next contends that his death sentence must be reversed because the term "serious physical abuse" is so vague that it could be applied to any murder, leaving the sentencer with too much discretion in the imposition of the death penalty. Appellant also alleges that the prosecutor's statement that "extremely unusual physical abuse" would indicate "serious physical abuse" somehow lessens the burden of proof for the State.

We considered the impact of the "serious physical abuse" requirement in *Foster v. State*, 779 P.2d 591 (Okl.Cr.1989). We held that by requiring either "serious physical abuse" or "torture" as a predicate for any finding that a murder was "especially heinous, atrocious or cruel" sufficiently channeled the discretion of the sentencer in a constitutional manner. The comments made by the prosecutor in elaborating on this necessary element were proper and did not in any way diminish the burden on the State, if anything, the comments pointed to an even higher standard of proof.

### XI

In this proposition, Appellant claims that the incorporation of a first stage instruction concerning the role of sympathy into the second stage may have caused the jury to improperly ignore mitigating evidence. Arguments identical to those of Petition-

**1350**

er's were recently rejected by the United States Supreme Court in *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). We see no need to address this issue further. For a more detailed discussion, see *Fox v. State,* 779 P.2d at 574–75.

## XII

As his twelfth assignment of error, Appellant claims that the instructions given in regard to the jury's treatment of mitigating evidence could have lead them to ignore the evidence and assess the death penalty without considering any of the mitigating evidence. The jury was instructed:

Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

If you unanimously find that the aggravating circumstance existed beyond a reasonable doubt, unless you also find that such aggravating circumstance outweighs the finding of one or more mitigating circumstances, the death penalty shall not be imposed.

O.R. 160, 161.

█ Once again, we will apply the standard developed in *Boyde v. California* to determine the merits of a challenged jury instruction. We must look to the likelihood that a reasonable juror, in light of all the proceedings, would ignore the mitigating evidence and the accompanying instructions and return a verdict without having considered any of the mitigating evidence.

In *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Supreme Court held that the Eighth and Fourteenth Amendments require that a sentencer may not be precluded in any way from considering all relevant mitigating evidence when the penalty sought against a defendant is death. Our opinion in *VanWoundenberg*

*v. State,* 720 P.2d 328, 336 (Okl.Cr.1986), *cert. denied* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395, specifically holds that the instructions given by Oklahoma courts fulfill this constitutional dictate. We held:

Title 21 O.S.1981, § 701.10 provides that a defendant can introduce evidence concerning any mitigating circumstance. In construing this statute, we have held that, "A defendant may offer 'any relevant evidence, within the limitations of the rules of evidence, bearing on his character, prior record or the circumstances of the offense.' " The record reveals that the trial court instructed the jury regarding the balancing of aggravating and mitigating circumstances and included in his instructions specific evidence presented by the appellant to be considered in mitigation. We find that such instruction is in full compliance with constitutional requirements as any further instructions would impermissibly limit the jury in its consideration of what factors should be weighed against the aggravating circumstances provided by statute. (Citations omitted).

█ Although there was no instruction in the present case which delineated any of the mitigating evidence for the jury, none was requested. Likewise, Appellant presented no evidence in the second stage. This generally waives any potential error. *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985), *cert. denied* 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732.

█ We find that in any event, the instructions given to the jury specifically told them to consider any evidence whatsoever in mitigation. They were told that this evidence *must* be balanced against any evidence offered in support of the aggravating circumstance and that it must be outweighed before they were even authorized to consider the death penalty. This is more than sufficient to guarantee that the jury was not precluded from considering any possible mitigating evidence. We do not find that there is a "reasonable likelihood"

that any mitigating evidence was ignored by the jury.

## XIII

██ In this allegation of error, Appellant claims that his death sentence must be vacated because the jury instructions, while clearly telling the jury that the aggravating factor must be weighed against the mitigating circumstances, failed to provide a method for the balancing of the two types of evidence. No such instruction has ever been necessitated. We rejected an identical argument in *Brogie v. State*, 695 P.2d 538, 544 (Okl.Cr.1985), modified 760 P.2d 1316 (Okl.Cr.1988), wherein we held:

[S]pecific standards for the balancing of aggravating and mitigating circumstances are not constitutionally required.

We have affirmed this result in *Fox v. State*, 779 P.2d at 574; *Smith v. State*, 737 P.2d 1206, 1215 (Okl.Cr.1987), *cert. denied* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383; *Walker v. State*, 723 P.2d 273, 284 (Okl.Cr. 1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600; and in *Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986), *cert. denied* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173. Our decisions are in accord with the precepts of the Supreme Court. *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). There is no error here.

## XIV

Appellant's next two arguments concern the dismissal of potential jurors during the *voir dire* proceedings based on their refusal to consider the imposition of the death penalty. In this case, Appellant complains because he was not allowed to ask additional questions of the first venireman to be dismissed due to his inability to consider the death penalty. He claims that the judge's negative response to his request to question the potential juror lead him to believe that he would get the same answer if he asked to question any other juror. He concludes that his failure to object to the dismissal of other jurors on similar grounds should therefore be excused.

██ This issue is not properly before the Court. We held in *Vardeman v. State*, 54 Okl.Cr. 329, 20 P.2d 194 (1933):

When any part of the questioning is denied ___ or excluded, in order to preserve the question, the proper procedure for defendant's counsel is to dictate into the record the questions he desires to ask the jurors and obtain a ruling of the court thereon, thereby enabling this Court to determine if the trial court abused its discretion in refusing to permit counsel to ask the questions.

We reiterated this requirement in *Banks v. State*, 701 P.2d 418, 423 (Okl.Cr.1985):

In the present case the defendant failed to make a record of the questions he intended to ask the excused veniremen, therefore we do not have a proper record from which to review the trial court's decision to disallow further questioning.

Accordingly, we will not address the propriety of the trial court's ruling that no further questioning was necessary.

## XV

██ In addition to claiming that his questioning was not allowed, Appellant challenges the dismissal for cause of three members of the jury panel. All three jurors were released when their responses to questions by the court indicated that they could not consider the death penalty as a potential punishment in this case. When considering such a claim, we are to apply the standard developed by the Supreme Court in *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985):

That standard is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath." (Quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)).

The Court held that the juror's bias need not be shown with "unmistakable clarity," but that "when the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law" deference will be given to that judge's opinion. We have reviewed the transcript of the proceedings below and find that the trial court's decision to excuse the three people in question is supported by the answers given. We will not substitute our decision for that of the trial court unless it appears that the trial court's decision was clearly erroneous.

## XVI

■ As his final assertion of error, Appellant claims that his death sentence is unconstitutional because the jury was not specifically instructed that it had the option of returning a life sentence notwithstanding the outcome of the balancing of the aggravating factors against the mitigating circumstances. No such instruction was requested. Accordingly, our consideration of this issue was waived by Appellant. *Fox v. State*, 779 P.2d at 574.

■ Even assuming that this issue had been properly preserved, there is no constitutional basis for the requirement of an instruction of the nature identified by Appellant. In the present case, the jury was instructed that it would be authorized to impose a sentence of death only upon first, a unanimous finding that the aggravating circumstance was proven beyond a reasonable doubt and second, only after a finding that the aggravating circumstance outweighed the mitigating circumstances. In addition to these instructions, the jury was informed of the presumption that a defendant is innocent of the charges alleged in the Bill of Particulars. These instructions are sufficient to protect Appellant from an improvidently assessed death sentence.

In *Walker v. State*, 723 P.2d at 284, we recognized that "courts have almost uniformly held that a criminal defendant is not entitled to such an instruction." We held

that it may be appropriate to give such an instruction *if one is requested,* but that the failure to give the instruction will not be deemed error. We reach the same result in this case.

## MANDATORY SENTENCE REVIEW

■ Pursuant to 21 O.S.Supp.1987, § 701.13(C), we have reviewed the entire record before us and find that we cannot say that the jury's verdicts in this matter were improperly influenced by passion, prejudice or any other arbitrary factor. We have specifically considered above the sufficiency of the evidence offered in support of the aggravating circumstance "that the murder was especially heinous, atrocious or cruel" and find the jury's verdict to be supported by the evidence.

Accordingly, the judgment and sentence in this case is AFFIRMED.

JOHNSON, J., concurs.

PARKS, J., specially concurring.

LUMPKIN, V.P.J., and BRETT, J., concurring in result.

PARKS, Judge, specially concurring:

For the reasons stated in my separate opinion in *Fox v. State*, 779 P.2d 562, 579 (Okl.Cr.1989), I continue to view the so-called "anti-sympathy" instruction in the second stage of trial unnecessary and confusing to the jury where mitigating evidence has been introduced. However, I must apply the majority's analysis as a matter of *stare decisis.* I also reiterate my opinion that the "especially heinous, atrocious or cruel" aggravating circumstance is unconstitutionally vague both on its face and as applied. *See Foster v. State*, 779 P.2d 591, 594 (Okl.Cr.1989) (Parks, P.J., specially concurring). As a matter of *stare decisis*, however, I yield to the "torture or serious abuse" standard adopted in *Stouffer.* Applying this standard, I agree that the evidence presented concerning the instant murder satisfied this circumstance

and that the sentence of death should be affirmed.

BRETT, Judge, concurs in result:

While I agree with the majority that appellant's conviction and death sentence should be affirmed, I disagree with the analysis on one issue in particular. In his second assignment of error, appellant contends that reversible error occurred when a State witness interjected inadmissible hearsay before the trial court had a chance to sustain defense counsel's objection. Defense counsel did not request that the jury be admonished to disregard the improper statement.

This Court held in *Kelsey v. State*, 744 P.2d 190 (Okl.Cr.1987), that a request that the jury be admonished does not preclude appellate review of the issue. However, the majority seems to place the burden back onto the defense counsel to do so by stating, "Such an admonishment in the present case would have been appropriate, but none was requested. Appellant now requests us to reverse his conviction regardless of the fact that the error could have been cured at trial. We are loath to reach such a result which could have easily been avoided." (Maj. at 8). I agree that this error does not require reversal in this case because of the substantial evidence presented at trial. However, if this had been a closer case, reversal may have been required because of this issue, even if the jury had been properly admonished. In *Shepard v. State*, 756 P.2d 597 (Okl.Cr. 1988), it appears from the opinion that the sustained objection prevented the inadmissible hearsay from being presented to the jury. Whereas, in this case, the witness interjected the inadmissible hearsay before the trial court was able to exclude the statement. Therefore, *Shepard* cannot stand for the proposition that reversal would not be required under similar circumstances.

Also, this error cannot be characterized as invited, as the majority states: "Second, appellant's failure to request admonition of the jury after the witness ignored requests to stop is in the nature of invited error." (Maj. at 8). Black's Law Dictionary defines invited error as:

In appellate practice, the principle of "invited error" is that if, during the progress of a cause, a party requests or moves the court to make a ruling which is actually erroneous, and the court does so, that party cannot take advantage of the error on appeal or review.

To be "invited error" in this case, defense counsel would have had to do something before the testimony was presented, not merely object to improper testimony and fail to request an admonishment.

In my view, the admission of the hearsay testimony was error, but in light of the substantial evidence of guilt presented, that error was harmless therefore I agree that the conviction and sentence should be affirmed.